1
2
3
4
5
6
7          UNITED STATES DISTRICT COURT
8        NORTHERN DISTRICT OF CALIFORNIA
9
10   CELERINA NAVARRO, and others,          Case No. 21-cv-05381-NC
11              Plaintiffs,
                                            **ORDER GRANTING IN PART AND**
12        v.                                **DENYING IN PART MOTION TO**
                                            **DISMISS; DENYING MOTION FOR**
13   THE CITY OF MOUNTAIN VIEW,             **PRELIMINARY INJUNCTION**
14              Defendant.                  Re: ECF 26, 33
15

16        Plaintiffs are six low-income Mountain View residents who allege that they have

17   been priced out of their homes and faced with the decision to either live in recreational

18   vehicles (RVs) on public streets or leave the city where they have built communities and

19   developed networks of resources.  To preserve their lives in their hometown, Plaintiffs

20   chose the first option–to move into RVs.  The City of Mountain View has now limited that

21   option by passing two ordinances that ban parking oversized vehicles (OSVs) on most of

22   its public streets.  Plaintiffs seek to invalidate the ordinances that are forcing them to leave

23   their families, schools, and doctors in Mountain View.  The City moves to dismiss the

24   complaint for failure to state a claim as to each of the twelve causes of action.  Plaintiffs

25   simultaneously move for a preliminary injunction to enjoin enforcement of the ordinances.

26        After a thorough evaluation, the Court denies the motion to dismiss Plaintiffs'

27   excessive fines, state-created danger doctrine, and unlawful seizure claims.  However, the

28   Court does find that Plaintiffs' have not sufficiently alleged claims for invasion of privacy,

1    the right to travel, and disability discrimination, so the Court dismisses these claims with

2    leave to amend.  The Court also denies the motion for a preliminary injunction, finding

3    that Plaintiffs fail to show that they are likely to face irreparable harm, or that the balance

4    of equities tips sharply in their favor, because there is no evidence that the City is ticketing

5    or towing Plaintiffs in the absence of an injunction.

6    I.      BACKGROUND

7           The relevant allegations from the complaint, and judicially noticed documents, are

8    as follows.  Plaintiffs Celerina Navarro, Janet Stevens, Gabriel Rangel Jaime, Armando

9    Covarrubias, Evelyn Estrada, and Alma Aldaco are Mountain View residents who live in

10   recreational vehicles (RVs) parked on public streets.  ECF 1 at ¶¶ 10-14.  Defendant City

11   of Mountain View is a local government agency and subdivision of the State of California.

12   *Id.* at ¶ 15.

13          The City has recently experienced a series of "corporate success stories" that have

14   brought significant wealth to certain residents of the City.  *Id.* at ¶ 34.  This increase in

15   wealth for some Mountain View residents has driven the cost of housing up for all

16   residents. *Id.* at ¶ 35.  For example, the fair market rent for a one-bedroom apartment in

17   Santa Clara County, where the City is located, increased 10% from 2019 to 2020.  *Id.* at ¶

18   36.  And the current median rent for a one-bedroom apartment in Mountain View is

19   $2,719.  *Id.*  To counterbalance the increased housing costs, the City set forth certain

20   housing development goals.  *Id.* at ¶ 37.  In 2015, the City committed to building 814 Very

21   Low-Income units and 492 Low-Income units by 2023.  *Id.*  As of 2020, the City has only

22   built 26.8% of the Very Low-Income units and 43% of the Low-Income units.  *Id.*  On the

23   other hand, the City has already built 345% of its planned Above Moderate units.  *Id.*

24          Due to the lack of affordable housing, many Mountain View residents were priced

25   out of their homes and resorted to living in their cars and RVs.  *Id.* at ¶¶ 35, 39.  Over the

26   past three years, the number of vehicles showing signs of human habitation ranged from

27   250 to 300 vehicles.  *Id.* at ¶ 39.  A "conservative" estimate from July 2020 found 265

28   inhabited vehicles, including 191 RVs, in Mountain View.  *Id.*

United States District Court
Northern District of California

2

1    At a City Council meeting in March 2019, the Council considered the increase in

2  OSVs and discussed a city-wide OSV parking ban.  *Id.* at ¶ 43.  The Council did not cite

3  any traffic data during the discussion.  *Id.*  Following the meeting, the Law Foundation of

4  Silicon Valley, the ACLU of Northern California, and Disability Rights Advocates

5  submitted a letter raising constitutional concerns with an OSV ban.  *Id.* at ¶ 44.  On June

6  11, 2019, the Council reconvened to discuss the RV "issue" and potential ban.  *Id.* at ¶ 45.

7  Again, the Council did not consider traffic safety concerns.  *Id.*

8    On September 24, 2019, the Council passed the two ordinances that comprise the

9  OSV Ban.  *Id.* at ¶¶ 40, 46, 47.  The Narrow Streets Ordinance (City of Mountain View,

10  Ordinance No. 15.19) prohibits parking an OSV on streets less than or equal to forty feet in

11  width.  *Id.* at ¶ 46.  And the Bike Lanes Ordinance (City of Mountain View, Ordinance No.

12  14.19) prohibits parking an OSV on streets with Class II Bikeways.  *Id.* at ¶ 47.  The Law

13  Foundation and ACLU-NC again testified regarding the constitutional concerns raised by

14  the Ordinances.  *Id.* at ¶ 48.

15    In December 2020, the Council passed a resolution (City of Mountain View,

16  Resolution No. 18533) enumerating the "narrow" streets.  *Id.* at ¶ 51.  Considering the

17  Ordinances and Resolution, the OSV Ban applies to 471, or approximately 89%, of the

18  City's 525 public streets.  *Id.*  Of the remaining 11%, many are unavailable as parking

19  options because they do not allow parking at all or do not allow parking from 2 a.m. to 6

20  a.m.; others have limited availability because they are near offices and used to park

21  corporate buses.  *Id.*  On June 22, 2021, the Council proposed adding additional Class II

22  Bikeways, potentially further limiting parking on the remaining 11% of streets.  *Id.*  As a

23  result, the Ordinances effectively ban OSV parking city-wide.  *Id.*

24    The City has already installed signs for the Bike Lanes Ordinance.  *Id.* at ¶ 52.  And

25  it announced in June 2021, that it is preparing to install signs for the Narrow Streets

26  Ordinance.  *Id.*  The Ordinances permit towing as soon as signs are installed.  *Id.* at ¶ 40.

27  Plaintiffs allege that the signs do not provide sufficient notice because: they do not state

28  that a vehicle will be towed if parked in violation of the sign; they depict a passenger car,

United States District Court
Northern District of California

3

not an OSV; and they include "unless exempted" language without further explanation of exemptions. *Id.* at ¶ 54. A violation of either Ordinance may result in owners being ticketed or towed at their own expense. *Id.* at ¶ 67, 55. Once the City begins to enforce the OSV Ban, Plaintiffs "will face an impossible, and in some cases life-threatening, choice: risk losing their homes and most of their possessions by staying or be forced out of the City altogether." *Id.* at ¶ 55.

This burden disproportionally impacts people with disabilities. *Id.* at ¶ 62. Those individuals face disproportionate harm if they are forced to move into public shelters or if they are too far from their medical providers and social support networks. *Id.* Individuals with mental health disabilities also "risk serious exacerbation" of their conditions if they lose their private, safe spaces. *Id.* Plaintiffs notified the City about this disproportionate impact and the need for reasonable accommodations in five letters. *Id.* at ¶ 64.

In response to the public outcry about the OSV Ban, the City implemented a Safe Parking Program, intended as a temporary solution to help families bridge the gap into permanent housing. *Id.* at ¶ 57. At its maximum capacity, the Safe Parking Program provides parking spaces for 67 OSVs and 34 passenger vehicles across all five parking lots. *Id.* at ¶ 58. Only four of the Program's spaces are ADA-compliant. *Id.* Even when all spaces are available, the Program cannot accommodate the approximately 250-300 inhabited vehicles in Mountain View. *Id.* The Program is already at full capacity and has had a waiting list since March 2020. *Id.* Only one Plaintiff, Celerina Navarro, has secured a spot in the Program, despite applications by all Plaintiffs. *Id.* at ¶ 59.

### A.    Procedural Background

On July 14, 2021, Plaintiffs sued the City for violations of due process, the right to travel, and the right to privacy and disability discrimination, excessive fines, and unlawful seizures. ECF 1. On August 16, the City moved to dismiss the complaint for failure to state a claim as to each of the twelve causes of action. ECF 26. The City filed an accompanying request for judicial notice. ECF 27. Shortly thereafter, Plaintiffs moved for a preliminary injunction to enjoin the City's enforcement of the Ordinances. ECF 33.

1 After the initial case management conference, the Court granted the parties' stipulation

2 agreeing to a provisional class for the preliminary injunction motion. ECF 53. On

3 October 20, 2021, the Court held a hearing on both motions. ECF 55. All parties have

4 consented to magistrate judge jurisdiction under 28 U.S.C. § 636(c). ECF 20; ECF 24.

5 ## II. LEGAL STANDARD FOR MOTION TO DISMISS

6 A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal

7 sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To

8 survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

9 true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.

10 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When

11 reviewing a 12(b)(6) motion, a court "must accept as true all factual allegations in the

12 complaint and draw all reasonable inferences in favor of the non-moving party." *Retail

13 Prop. Trust v. United Bd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir.

14 2014). A court, however, need not accept as true "allegations that are merely conclusory,

15 unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs.

16 Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). A claim is facially plausible when it "allows

17 the court to draw the reasonable inference that the defendant is liable for the misconduct

18 alleged." *Id.* If a court grants a motion to dismiss, leave to amend should be granted

19 unless the pleading could not possibly be cured by the allegation of other facts. *Lopez v.

20 Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

21 ## III. MOTION TO DISMISS DISCUSSION

22 ### A. Judicial Notice

23 The City requests judicial notice of twenty-two documents, Exhibits A through V.

24 ECF 27. At the hearing, the Court ruled that it would only take judicial notice of three

25 documents: Exhibit A (City of Mountain View, Ordinance No. 15.19), Exhibit B (City of

26 Mountain View, Ordinance No. 14.19), and Exhibit C (City of Mountain View, Resolution

27 No. 18533). ECF 58 at 10-12; *see* ECF 26-1 at 7-11, 12-16, 17-51. The Court finds that

28 judicial notice of the remaining documents is not appropriate and disregards references to

5

Exhibits D through V in its evaluation of the motion to dismiss. *See* Fed. R. Evid. 201; *see also Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

### B.   Excessive Fines Claims

A fine is unconstitutionally excessive under the Eighth Amendment if its amount "is grossly disproportional to the gravity of the defendant's offense." *U.S. v. Bajakajian*, 524 U.S. 321, 336-37 (1998).  To determine if a fine is grossly disproportional, a court must consider: "(1) the nature and extent of the underlying offense; (2) whether the underlying offense related to other illegal activities; (3) whether other penalties may be imposed for the offense; and (4) the extent of the harm caused by the offense." *Pimentel v. City of Los Angeles*, 974 F.3d 917, 921 (9th Cir. 2020) (internal citations omitted).

#### 1.   Excessive Fines: $65 Ticket

The City represents that its $65 ticket is not excessive because: (1) Plaintiffs can move their vehicles; (2) it is implausible that the City will issue limitless tickets; (3) the California Vehicle Code provides an appeals process if Plaintiffs are unable to pay; and (4) under *Pimentel*, the City's ticket is not excessive.  Although these arguments may have merit, they do not demonstrate deficiencies in Plaintiffs' pleadings.

Plaintiffs sufficiently allege that they cannot repark their vehicles.  The OSV Ban applies to approximately 89% of the City's streets and much of the remaining streets are unavailable for parking.  ECF 1 at ¶ 51.  Plaintiffs also sufficiently allege the possibility of unlimited tickets because the Ordinances do not impose a cap on citations.  *Id.* at ¶ 67; *see* ECF 26-1 at 10, 14.  Similarly, although there may be a state-mandated appeals process, the City does not reference this process in the Ordinances or on the posted signage, so it cannot argue that Plaintiffs should know about it.  *Id.* at 8-11, 13-16; ECF 1 at ¶ 54.

Finally, the *Pimentel* court's determination that a $63 ticket is not excessive does not foreclose Plaintiffs' argument that the $65 ticket here is excessive because the cases are distinguishable.  In addition to the factual differences–overstaying a parking meter versus parking an inhabited vehicle on a "narrow" street or a street with a bike lane–the two cases are procedurally different.  974 F.3d at 920; *see* ECF 1 at ¶¶ 35, 46, 47.  The

*Pimentel* court affirmed that the $63 ticket was not excessive at the summary judgment stage, with the benefit of full discovery into the plaintiff's culpability and harm, the relation of the ticket to other crimes, and alternatives to the fine.  974 F.3d at 922-925. Here, the City asks the Court to apply *Pimentel*'s fact-specific holding without the benefit of developed evidence.  The Court declines to do so.

### 2.    Excessive Fines: Towing Costs

Next the City argues that passing towing costs onto Plaintiffs does not constitute an excessive fine because: (1) costs associated with impoundment are not necessarily punitive, and (2) Plaintiffs will have notice and will be able to move their vehicles to avoid towing.  First, the City does not provide any binding or factually analogous case law for its assertion that impoundment costs are not necessarily punitive, even after critiquing Plaintiffs for the same argumentative deficiency.  ECF 26 at 17; ECF 50 at 11.  Second, the City again rests on its assertion that there remain plenty of places for Plaintiffs to park. Because this is the City's motion, the Court must accept as true Plaintiff's allegations that the remaining streets and Safe Parking Program do not provide enough parking to accommodate all of the vehicles affected by the OSV Ban.  ECF 1 at ¶¶ 51, 57.  Thus, Plaintiffs sufficiently allege that they cannot avoid the towing costs by merely moving their vehicles, thereby answering the City's second challenge.

In conclusion, the complaint states plausible claims for excessive fines.

### C.    Violation of Substantive Due Process: State-Created Danger Claim

"Under the Fourteenth Amendment, the state deprives a person of a substantive due process right if it "affirmatively place[s] the plaintiff in a position of danger." *Wood v. Ostrander*, 875 F.2d 578, 589 (9th Cir. 1989).  To state a claim under the state-created danger doctrine, a plaintiff must show that: (1) the government's affirmative actions created or exposed them to "an actual, particularized danger" that they would not otherwise have faced," (2) the injury suffered was foreseeable, and (3) the government was "deliberately indifferent" to the known danger." *Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019) (internal citations omitted).

### 1.    Affirmative Actions & Actual, Particularized Danger

The City contends that Plaintiffs fail to state a claim because they only allege speculative, generalized dangers and the state-created danger doctrine does not support complaining about something "that has not happened and may never happen."  ECF 26 at 18.  In support, the City cites to several cases where courts found an actual, particularized danger and applied the doctrine, but it does not provide case law where courts declined to apply the doctrine because the alleged danger was too "speculative" or "generalized."  *Id.*

The City then claims that any dangers that Plaintiffs might face are not due to the City's affirmative actions.  The City reiterates its point that there are plenty of places for Plaintiffs to park without violating the Ordinances, so any harms stem from Plaintiffs' decisions to stay parked in prohibited areas.  *See id.* at 19.  This argument fails because, accepting Plaintiffs' allegations as true, there are not enough remaining spaces for the RV inhabitants to park without violating the Ordinances.  ECF 1 at ¶¶ 51, 57.  In sum, Plaintiffs sufficiently allege this element of the state-created danger doctrine.

### 2.    Foreseeable Injury

The City's motion does not challenge the sufficiency of Plaintiffs' allegations as to this element of the state-created danger doctrine test.

### 3.    Deliberate Indifference to a Known Danger

As to the last element, the City cites *Patel v. Kent School District* for the premise that the government must "know[] that something *is* going to happen but ignores the risk" to be deliberately indifferent.  648 F.3d 965, 974 (9th Cir. 2011).  The City insists that "Plaintiffs cannot plausibly allege that the City *knows* that towing an oversized vehicle will inevitably expose individuals to danger."  ECF 26 at 20.  Plaintiffs allege that rents have ballooned, the City is behind on its affordable housing goals, many OSVs parked on prohibited streets are used for human habitation, the Safe Parking Program does not have sufficient spaces for the inhabited OSVs, and the City knew about the disproportionate impact of the OSV Ban on people with disabilities.  ECF 1 at ¶¶ 36, 37, 39, 58, 64.  Based on these allegations, a rational fact finder can determine that the City is aware that

Plaintiffs will be harmed if the Ordinances are enforced.  Thus, this inquiry should go to the jury and should not be dismissed on the pleadings.  *See Patel*, 648 F.3d at 974.

### 4.    Application of Doctrine to a Class of Plaintiffs

Finally, the City posits that "the Ninth Circuit has already refused to apply the state-created danger doctrine to a group of individuals."  ECF 26 at 20.  The Court disagrees. The case the City cites to is a Northern District of California case, *Bologna v. City and Cty. of San Francisco*, where Judge Susan Illston declined to apply the doctrine to "the population of a city."  Case No. 3:09-cv-02272-SI, 2009 U.S. Dist. LEXIS 69985, at *16 (N.D. Cal. Aug. 11, 2019).  Yet, in her opinion, Judge Illston acknowledged that the doctrine could be implicated "when a state actor creates a risk that is specific to a[] . . . small group of individuals, rather than to the general public."  *Id.* at *17.  Given this permissive language, the Court does not find that the state-created danger doctrine cannot apply to Plaintiffs' proposed class.  *See* ECF 1 at ¶ 17.

In conclusion, the complaint states a plausible claim for violation of the state-created danger doctrine.

### D.    Unlawful Seizure by Towing Claims

The Fourth Amendment guarantees the right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.  U.S. Const. amend. IV.  Towing a vehicle constitutes a "seizure."  *Miranda v. City of Cornelius*, 429 F.3d 858, 862 (9th Cir. 2005).  The Ninth Circuit requires notice before the government can seize property unless the government presents a "strong justification for departing from the norm."  *Clement v. City of Glendale*, 518 F.3d 1090, 1093-94 (9th Cir. 2008).

### 1.    Sufficiency of Signs as Notice

The City asserts that its posted signs provide sufficient notice under state and municipal law, so Plaintiffs cannot state a claim under the Fourth Amendment.  The City's posted signs appear to meet the pre-towing requirements set forth in California Vehicle Code § 22651(n).  Even so, meeting this requirement is not necessarily sufficient to satisfy due process.  "Consideration of what procedures due process may require under any given

set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." *Cafeteria & Restaurant Workers Union v. McElroy*, 367 U.S. 886, 895 (1961). Plaintiffs concede that the City has posted signs, but they maintain that this signage is insufficient notice given the risks at stake.[1] ECF1 at ¶¶ 52, 54; 56, 82. Taking the allegations as true, the Court agrees with Plaintiffs.

### 2. Application of Community Caretaking Doctrine

Because warrantless seizures are "per se unreasonable," the government bears the burden of showing that a warrantless seizure falls within an exception to the Fourth Amendment's warrant requirement. *U.S. v. Cervantes*, 703 F.3d 1135, 1141 (9th Cir. 2012) (citing *U.S. v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001)). The community caretaking doctrine permits officers to impound vehicles that "jeopardize public safety and the efficient movement of vehicular traffic." *Miranda*, 429 F.3d at 864. The City claims that if the OSVs block traffic or bike lanes, impoundment may be lawful. ECF 26 at 23. Plaintiffs allegations, which the Court must accept as true, overcome this argument. Plaintiffs allege that there is no evidence of increased accidents in bike lanes caused by parked OSVs. ECF 1 at ¶ 47. Thus, the City has not met its burden to demonstrate a risk to public safety that validates its seizures under the community caretaking doctrine.

In conclusion, the complaint states a plausible claim for unlawful seizure by towing.

### E. Invasion of Privacy Claim

Article 1, § 1 of the California Constitution enshrines the right to privacy. To state a claim for violation of the right, a plaintiff must establish: (1) a legally protected privacy interest, (2) a reasonable expectation of privacy, and (3) an intrusion so serious in nature, scope, and actual or potential impact as to constitute an egregious break of social norms. *Hernandez v. Hillsides, Inc.*, 47 Cal.4th 272, 287 (2009).

---

[1] For the purposes of this motion the Court only analyzes the notice procedures as alleged in the complaint. ECF 2 at ¶¶ 40, 54. The Court does not evaluate the notice described in the City's motion or Reply as these assertions rely on documents outside of the complaint and judicially noticed Exhibits A, B, and C. *See* ECF 26 at 21-22; *see also* ECF 50 at 14.

United States District Court
Northern District of California

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12

The City claims that Plaintiffs fail to allege each element of the test.  Plaintiffs assert a privacy interest in their homes, families, and emotions citing *White v. Davis*, 13 Cal. 3d 757, 774-75 (1975).  ECF 1 at ¶ 92.  The Court does not read *White* to directly recognize a privacy right in one's home, family, and emotions, rather *White* considered that quoted language in support of the plaintiff's argument and found that there was an invasion of privacy based on the application of the argument to the specific facts.  *Id.* at 775-76.  Plaintiffs next assert that they have a reasonable expectation of privacy in their homes.  ECF 41 at 24.  But Plaintiffs do not provide authority or argument for extending that expectation of privacy to homes that happen to be parked on public streets.  Finally, Plaintiffs assert that the potential seizure is "incredibly violative" of their right to be left alone.  ECF 1 at ¶ 93.  This allegation does not clearly explain what the "intrusion" is and how it breaks from social norms.  *See Hernandez*, 47 Cal.4th at 287.

13
14

In conclusion, the complaint does not state a plausible claim for invasion of privacy. Accordingly, the Court dismisses this claim with leave to amend.

15

**F.      Right to Travel Claims**

16
17
18
19

A law implicates the right to travel when: (1) the law actually deters such travel; (2) when impeding travel is the law's primary objective; or (3) when the law uses any classification which serves to penalize the exercise of that right.  *Attorney Gen. of N.Y. v. Soto-Lopez*, 476 U.S. 898, 903 (1986).

20
21
22
23
24
25
26

Plaintiffs argue that the Ordinances deter their travel by "making it difficult if not impossible for them to continue to be anywhere in the City."  ECF 41 at 25.  It is unclear how "travel" is implicated when Plaintiffs frame the allegation using a different verb: "be." *Id.*  Does the right to *travel* encompass the right to *be*?  It does not appear so from the caselaw.  Plaintiffs do not cite binding authority for the assertion that they have a right to "peacefully dwell[] in the place of their choosing."  *See* ECF 1 at ¶ 97.  As alleged, the complaint does not state a plausible claim for violations of the right to travel.  Therefore,

27
28

1   the Court dismisses these claims with leave to amend.[2]

2       **G.**     **ADA Claim**

3       Title II of the ADA provides that "no qualified individual with a disability shall, by

4   reason of such disability, be excluded from participation in or be denied the benefits of the

5   services, programs, or activities of a public entity, or be subjected to discrimination by any

6   such entity." 42 U.S.C. § 12132. To state a claim under Title II, a plaintiff must allege:

7   (1) they are an individual with a disability, (2) they are otherwise qualified to participate in

8   or receive the benefit of some public entity's services, programs, or activities, (3) they

9   were either excluded from participation in or denied the benefits of the public entity's

10   services, and (4) such exclusion, denial, or discrimination was by reason of their disability.

11   *Daniel v. Levin*, 172 Fed. App'x 147, 149 (9th Cir. 2006).

12       The City proffers several grounds for failure to state a Title II claim, but one

13   deficiency of the allegations is obvious: Plaintiffs do not allege how the City discriminated

14   against them because of their disabilities. *See* ECF 1 at ¶¶ 101-117. Plaintiffs claim that

15   individuals with disabilities are disproportionately burdened by the OSV Ban, but

16   disproportionate burden is not enough to sustain a Title II claim. *Id.* at ¶113; *see Daniel*,

17   172 Fed. App'x at 149. In fact, it seems inconsistent to argue that the Ban harms *all* OSV

18   residents while simultaneously arguing that the Ban *targets* OSV residents with disabilities

19   because of their disabilities. In conclusion, the complaint does not state a plausible claim

20   for a violation of Title II; the Court dismisses this claim with leave to amend.

21       The City maintains that the elements of a Title II claim are largely coextensive with

22   Rehabilitation Act and California Disabled Persons Act claims and compliance with the

23   ADA generally means compliance with California Government Code § 11135. ECF 26 at

24   31. Plaintiffs did not oppose these assertions. *See* ECF 41. Thus, because the ADA claim

25   is dismissed, these claims are also dismissed with leave to amend.

26

27     [2] Plaintiffs are encouraged to provide more support for their allegation that the right to
intrastate travel is a fundamental right. The Court's research presented substantial support

28   for interstate travel as a fundamental right, but nothing for intrastate travel. *See Nunez by
Nunez v. City of San Diego*, 114 F.3d 935 (9th Cir. 1997).

United States District Court
Northern District of California

IV.    **LEGAL STANDARD FOR PRELIMINARY INJUNCTION**

The purpose of a preliminary injunction is to "preserve the relative positions of the parties until a trial on the merits can be held."  *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).  A plaintiff seeking a preliminary injunction must establish that: (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest.  *Winter v. Nat'l Res. Def. Council*, 555 U.S. 7, 20 (2008).  The Ninth Circuit allows a court to grant injunctive relief if a plaintiff can demonstrate a combination of either: (1) "probable success on the merits and the possibility of irreparable injury" or (2) "that serious questions are raised and the balance of hardships tips sharply in their favor."  *Rodde v. Bonta*, 357 F.3d 988, 994 (9th Cir. 2004) (internal citations omitted).

V.    **PRELIMINARY INJUNCTION DISCUSSION**

Plaintiffs present the Court with additional evidence to consider with their motion. Plaintiffs provide declarations from each Plaintiff, except Evelyn Estrada.  ECF 33-2; ECF 33-3; ECF 33-4; ECF 33-5; ECF 33-6.  They also proffer a declaration from Maria Marroquin, Executive Director of the Day Worker Center of Mountain View.  ECF 33-7. And they included over 300 pages of documents regarding housing and homelessness plans and reports, parking enforcement information requests and statistics, police policies regarding towing, redlines and recommendations regarding the Ordinances at issue, and City Council meeting minutes, among other documents.  ECF 33-1.  The Court considers this evidence in its evaluation.

A.    **Likelihood of Irreparable Injury & Probable Success on the Merits**

Under the first combination, the Court begins its analysis with whether Plaintiffs are likely to suffer irreparable harm in the absence of an injunction.  *See id.*  To satisfy this element, a plaintiff must establish that irreparable harm is likely, not just possible.  *Winter*, 555 U.S. at 22.

Plaintiffs posit that they are likely to suffer irreparable harm through actual enforcement of the Ban, "which will rip their RV homes from their possession," "cripple

them with debt," or "force them to live on the streets" without the shelter of their vehicles. ECF 33 at 20.  Yet Plaintiffs allege that the Ban is currently enforceable, but the City has not issued any tickets or towed any vehicles.  *Id.* at 15; ECF 43 at 16.  Thus, although "the plain language of the Ordinances provides for immediate enforcement . . . upon a single violation," given the allegations before the Court, "immediate" irreparable harm is unlikely.  ECF 49 at 8; *see Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

Plaintiffs also argue that they are likely to suffer irreparable harm through the threat of enforcement, "which places Plaintiffs under significant duress as they attempt to live their lives."  ECF 33 at 20.  The only case Plaintiffs provide that addresses psychological injuries is *Chalk v. U.S. District Court Central District*.  ECF 33 at 20.  But *Chalk* evaluates the irreparable harm of a psychological injury after a regulation has been enforced.  840 F.2d 701, 709 (9th Cir. 1988).  It is not instructive here where the alleged psychological harm stems from the threat of enforcement.  Ultimately, the Court finds that Plaintiffs fail to show a likelihood of irreparable harm.

Because a preliminary injunction is an "extraordinary remedy," the Plaintiffs' lack of irreparable harm is insufficient to buoy any probable success on the merits.  *See Winter*, 555 U.S. at 9.

### B.    Serious Questions Raised & Balance of Equities

Because Plaintiffs cannot satisfy the first combination, the Court now evaluates the second combination, beginning with whether the balance of equities "tips sharply" in Plaintiffs' favor.  *Rodde*, 357 F.3d at 994.

Here, if the preliminary injunction is not issued, it is not clear that Plaintiffs will suffer any cognizable harm.  As analyzed above, no injunction is in place, the City can enforce the Ordinances, and yet, no tickets have been issued and no RVs have been towed. ECF 33 at 15; ECF 43 at 16.  Similarly, if the preliminary injunction is issued, it is not apparent that the City will be harmed either.  The City states that pedestrians, bicyclists, and motorists will be harmed if OSVs can continue to park on its "narrow" and bike-laned streets, but it does not point to any injuries from OSV parking in the past.  ECF 30 at 30;

1    ECF 33 at 30.  Thus, the balance of equities does not tip in either direction, let alone in

2    sharply Plaintiffs' favor.  Like with the first combination, because a preliminary injunction

3    is an "extraordinary remedy," Plaintiffs' inability to show that the balance of equities tips

4    "sharply" in their favor requires the Court to deny a preliminary injunction.  *See Winter*,

5    555 U.S. at 9; *see also Rodde*, 357 F.3d at 994.

6         In conclusion, Plaintiffs fail to make the requisite showing for either combination of

7    factors.  Accordingly, the Court denies Plaintiffs' motion for a preliminary injunction.

8    **VI.   CONCLUSION**

9         For the foregoing reasons, the Court: (1) DENIES Plaintiffs' motion for a

10   preliminary injunction, (2) DENIES the City's motion to dismiss Plaintiffs' excessive

11   fines, state-created danger doctrine, and unlawful seizure claims, (3) GRANTS the City's

12   motion to dismiss Plaintiffs' invasion of privacy, right to travel, and disability

13   discrimination claims, and (4) GRANTS Plaintiffs leave to amend the deficient claims.

14   Plaintiffs may not add any new parties or claims without further leave of Court.  Plaintiffs

15   must file their amended complaint or notify the Court that they do not wish to amend by

16   **November 30, 2021**.  If Plaintiffs do not act by November 30, the Court will dismiss the

17   claims identified in this order with prejudice.  The City does not need to answer the

18   complaint unless Plaintiffs file a notice that they will not file an amended complaint.

19

20        **IT IS SO ORDERED.**

21

22   Dated:  November 8, 2021            _____

23                                       NATHANAEL M. COUSINS
                                         United States Magistrate Judge

24

25

26

27

28