ERIN NEFF (SBN 326579)
erin.neff@lawfoundation.org
KAREN E. KONTZ (SBN 300918)
karen.kontz@lawfoundation.org
LAW FOUNDATION OF SILICON
VALLEY
4 North Second Street, Suite 1300
San Jose, CA 95113
Telephone:  (408) 280-2410
Facsimile:   (408) 293-0106

THOMAS ZITO (SBN 304629)
tzito@dralegal.org
SEAN BETOULIERE (SBN 308645)
sbetouliere@dralegal.org
DISABILITY RIGHTS ADVOCATES
2001 Center Street, 4th Floor
Berkeley, California 94704-1204
Telephone: (510) 665-8644
Facsimile: (510) 665-8511

DEANNA L. KWONG (SBN 233480)
deanna.l.kwong@hpe.com
HEWLETT PACKARD ENTERPRISE
6280 America Center Drive
San Jose, CA 95002
Telephone: (650) 258-3307
*Pro Bono Counsel*

*Attorneys for Plaintiffs*

WILLIAM S. FREEMAN (SBN 82002)
wfreeman@aclunc.org
GRAYCE ZELPHIN (SBN 279112)
gzelphin@aclunc.org
BRANDON GREENE (SBN 293783)
bgreene@aclunc.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-8437

QUYEN L. TA (SBN 229956)
qta@kslaw.com
ARWEN R. JOHNSON (SBN 247583)
ajohnson@kslaw.com
KELLY PERIGOE (SBN 268872)
kperigoe@kslaw.com
SAMUEL R. DIAMANT (SBN 288738)
sdiamant@kslaw.com
RACHEL RUBENS (SBN 333886)
rrubens@kslaw.com
KING & SPALDING LLP
50 California Street, Suite 3300
San Francisco, CA 94111
Telephone:  (415) 318-1227

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| CELERINA NAVARRO, JANET STEVENS, ARMANDO COVARRUBIAS, EVELYN ESTRADA, GABRIEL RANGEL JAIME, ALMA ALDACO, and all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>THE CITY OF MOUNTAIN VIEW,<br><br>    Defendant. | Case No. 5:21-cv-05381-NC<br><br>**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:    November 2, 2022<br>Time:    1:00 p.m.<br>Place:    Remote (Zoom)<br>Judge:   Hon. Nathanael Cousins |

1

**TABLE OF CONTENTS**

2    I.    INTRODUCTION ........................................................................................... 1

3    II.   BACKGROUND .............................................................................................. 2

4          A.    Procedural History ................................................................................ 2

5          B.    History of Settlement Negotiations........................................................ 4

6          C.    Material Terms of the Proposed Settlement........................................... 5

7                1.    OSV Parking Capacity.................................................................. 5

8                2.    Composite Parking Regulation Map............................................. 5

9
                 3.    Enforcement and Dispute Resolution .......................................... 6
10
                 4.    Reasonable Accommodation Requests Based on Disability ....... 6
11
12               5.    Attorneys' Fees ............................................................................ 7

13               6.    Class Release ............................................................................... 7

14   III.  LEGAL STANDARD....................................................................................... 7

15   IV.   ARGUMENT ................................................................................................... 8

16         A.    The Proposed Settlement Class Meets the Requirements of Rule
                 23(a). ..................................................................................................... 8
17
                 1.    The Settlement Class is Sufficiently Numerous. ......................... 8
18
19               2.    The Settlement Class Satisfies Commonality. ............................. 9

20               3.    The Named Plaintiffs' Claims are Typical. ............................... 10

21               4.    Named Plaintiffs and Class Counsel are Adequate
                       Representatives. ......................................................................... 11
22
           B.    The Proposed Settlement Class Meets the Requirements of Rule
23               23(b)(2). ............................................................................................... 13

24         C.    The Proposed Settlement Should be Preliminarily Approved. ............ 13

25               1.    Plaintiffs and Their Counsel Have Adequately Represented
                       The Class................................................................................... 14
26
                 2.    The Proposed Settlement Was Negotiated at Arm's Length. ..... 15
27
28               3.    The Relief Provided for the Class is Adequate........................... 15

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

a.      Adequacy of Relief ........................................................ 16

b.      Costs, Risks, and Delay of Trial and Appeal ................................ 18

c.      Effectiveness of Proposed Method of Distributing Relief.................................................................. 18

d.      Proposed Attorneys' Fees ............................................. 19

e.      The Class Release is only for claims that were or could have been asserted in this case, and that are based on an  identical factual predicate; class member claims for damages are expressly excluded................... 19

4.      The Proposal Treats Class Members Equitably. ...................................... 20

D.      The Proposed Notice Form and Notice Plan Are Appropriate. ........................... 20

E.      The City Will Provide Notice to Federal and State Officials as Required by CAFA. ................................................................. 21

F.      Proposed Schedule and Deadlines ....................................... 21

V.      CONCLUSION............................................................... 22

1

## TABLE OF AUTHORITIES

2

**Cases**

*Abdullah v. U.S. Sec. Assocs., Inc.*,
  731 F.3d 952 (9th Cir. 2013) ............................................................................. 9

*Am. Council of the Blind v. Astrue*,
  No. C05-04696 WHA, 2008 WL 4279674 (N.D. Cal. Sept. 11, 2008).................................. 12

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997)................................................................................. 7, 13

*B.K. by her next friend Tinsley v. Snyder*,
  922 F.3d 957 (9th Cir. 2019) ............................................................................ 10

*Baby Neal for & by Kanter v. Casey*,
  43 F.3d 48 (3d Cir. 1994) .............................................................................. 13

*Bakhtiar v. Info. Res., Inc.*,
  2021 WL 4472606 (N.D. Cal. Feb. 10, 2021) ............................................................... 7

*Californians for Disability Rights, Inc. v. California Dep't of Transp.*,
  249 F.R.D. 334 (N.D. Cal. 2008)......................................................................... 11

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ............................................................................ 7

*Garner v. State Farm Mut. Auto Ins. Co.*,
  No. CV 08 1365 CW (EMC), 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010)........................... 16

*Geary v. City of Pacifica*,
  No. 3:21-cv-1780-VC (N.D. Cal.) ........................................................................ 17

*Gen. Tel. Co. of the Sw. v. Falcon*,
  457 U.S. 147 (1982)................................................................................... 11

*Gray v. Golden Gate Nat'l Recreational Area*,
  279 F.R.D. 501 (N.D. Cal. 2011)...................................................................... 10, 13

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ..................................................................... passim

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) ........................................................................... 10

*Hesse v. Sprint Corp.*,
  598 F.3d 581 (9th Cir. 2010) ........................................................................... 20

*In re Aqua Metals, Inc. Sec. Litig.*,
  No. 17-cv-07142-HSG, 2022 WL 612804 (N.D. Cal. Mar. 2, 2022)..................................... 16

*In re Bluetooth Headset Prod. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ........................................................................... 19

iii

*In re Extreme Networks, Inc. Sec. Litig.*,
  No. 15-CV-04883-BLF, 2019 WL 3290770 (N.D. Cal. July 22, 2019) ........................... 14, 15

*In re MyFord Touch Consumer Litig.*,
  No. 13-CV-03072-EMC, 2019 WL 1411510 (N.D. Cal. Mar. 28, 2019) ............................ 14

*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) ........................................................................ 15

*Just Film, Inc. v. Buono*,
  847 F.3d 1108 (9th Cir. 2017) ............................................................................... 10, 11

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012) ................................................................................. 14, 20

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012) .......................................................................................... 9

*O'Connor v. Uber Techs., Inc.*,
  No. 13-CV-03826-EMC, 2019 WL 1437101 (N.D. Cal. Mar. 29, 2019) ............................ 14

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*,
  688 F.2d 615 (9th Cir. 1982) .......................................................................................... 7

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) ................................................................................. 10, 13

*Rannis v. Recchia*,
  380 Fed. Appx. 646 (9th Cir. 2010) ............................................................................... 8

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ........................................................................................ 20

*Roes, 1-2 v. SFBSC Mgmt., LLC*,
  No. 17-17079, 2019 WL 6721190 (9th Cir. 2019) .......................................................... 15

*Sueoka v. United States*,
  101 F. App'x 649 (9th Cir. 2004) .................................................................................... 9

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ................................................................................................. 9, 10

**Statutes**

28 U.S.C. § 1715 .......................................................................................................... 21

42 U.S.C. § 12101, *et seq.* ............................................................................................ 2

**Rules**

Fed. R. Civ. P. 23(a) ............................................................................................... passim

Fed. R. Civ. P. 23(b) ............................................................................................... passim

Fed. R. Civ. P. 23(c) .............................................................................................. 20, 21

iv

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Fed. R. Civ. P. 23(e) ........................................................................................................... passim

Fed. R. Civ. P. 23(h) ........................................................................................................... 7, 19

1

**NOTICE OF MOTION AND MOTION**

2 TO ALL PARTIES and the COURT: PLEASE TAKE NOTICE THAT on November 2,

3 2022 at 1:00 p.m., or as soon thereafter as can be heard, Plaintiffs Celerina Navarro, Janet

4 Stevens, Armando Covarrubias, Evelyn Estrada, and Alma Aldaco (collectively "Plaintiffs" or

5 "Named Plaintiffs"), will move the Court for entry of an order: (1) granting preliminary approval

6 of their proposed class-wide settlement agreement, submitted herewith as Ex. 2 to the

7 Declaration of Erin Neff ("Neff Declaration"); (2) provisionally certifying the proposed

8 settlement class and appointing Plaintiffs' attorneys as class counsel, pending final approval; (3)

9 approving the Parties' proposed form of notice and directing notice to the class; and (4) setting

10 deadlines for notice, objections, and a final fairness hearing.  The hearing on this motion will

11 take place before United States Magistrate Judge Nathanael Cousins, and will be conducted via

12 Zoom webinar (the login information for which can be found on the Court's website at

13 https://www.cand.uscourts.gov/judges/cousins-nathanael-nc/).  This motion is based upon this

14 Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the

15 concurrently filed declarations and exhibits, all pleadings and papers on file in this action, and

16 any oral argument that may be presented.  Defendant City of Mountain View ("Defendant" or

17 "City") will separately join this motion.

18

**MEMORANDUM OF POINTS AND AUTHORITIES**

19 **I.    INTRODUCTION**

20 In 2021, Plaintiffs filed this action against the City of Mountain View, alleging that two

21 recently-enacted ordinances restricting when and where oversized vehicles ("OSVs") could park

22 violated the state and federal constitutional and statutory rights of Plaintiffs and other people

23 living in OSVs.  Following extensive negotiations that took place over more than nine months,

24 the Parties have reached a Settlement Agreement (the "Agreement") that—among other things—

25 will ensure OSV residents have at least three miles of parking available to them in the City, and

26 will receive notice prior to towing of their vehicular homes.  The Agreement is in the best

27 interest of all Parties and satisfies the requirements of Federal Rule of Civil Procedure 23.

28 Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the Agreement;

1    (2) provisionally certify the proposed settlement class and appoint Plaintiffs' attorneys as class

2    counsel, pending final approval; (3) approve the Parties' proposed form of notice and direct

3    notice to the class; and (4) set deadlines for notice, objections, and a final fairness hearing.[1]

4    **II.    BACKGROUND**

5        On October 22, 2019, the Mountain View City Council passed Ordinance No. 14.19 to,

6    among other things, restrict the parking of OSVs on streets adjacent to Class II bikeways (the

7    "Bike Lane Ordinance"), and Ordinance No. 15.19 to, among other things, restrict the parking of

8    OSVs on streets that are 40 feet wide or less (the "Narrow Streets Ordinance") (collectively, the

9    "Ordinances").

10        **A.    Procedural History**

11        On July 14, 2021, Plaintiffs filed a class action complaint for declaratory and injunctive

12    relief on behalf of "all persons who currently reside, seek to reside, or who have resided in an

13    oversized vehicle within Mountain View between December 18, 2020 (the date that the Narrow

14    Streets Ordinance was passed) and the present" ("Proposed Class").  ECF No. 1 ("Compl.")

15    ¶ 17.[2]  The complaint asserted claims arising under the U.S. and California constitutions and

16    federal and state statutes.  *Id.* ¶¶ 65-133.  On August 17, 2021, the City filed a motion to dismiss

17    the complaint, asserting that Plaintiffs failed to state a claim for relief as to each of the claims

18    pleaded.  ECF No. 26.  On August 30, 2021, Plaintiffs filed a motion for preliminary injunction,

19    ECF No. 33, seeking an order prohibiting the City from enforcing the Ordinances.  The City filed

20    its opposition to the motion on September 21, 2021.  ECF No. 41.

21        On September 7, 2021, in lieu of Plaintiffs filing a motion for provisional class

22    certification, the Parties filed a stipulation agreeing that in the event the Court issued injunctive

23    relief such relief would extend to all members of the Proposed Class, and preserving the right of

---

[1]    Nothing in this unopposed motion should be construed as an admission of liability, or a waiver of any arguments or defenses any party might raise in the future, should final approval not be granted.

[2]    The complaint also proposed a "disability subclass" consisting of all Class members who have a disability as defined under the Americans with Disabilities Act.  Compl. ¶ 26.  Plaintiffs do not seek certification of a disability subclass here, however, because the proposed class settlement provides the same relief to all class members, including class members with disabilities.

1   Plaintiffs to move for class certification at a later date and the right of the City to object to such a

2   motion.  ECF No. 37.  The Court approved this stipulation on October 8, 2021.  ECF No. 53.

3   The Parties also stipulated to a protective order, which was entered by the Court on September

4   29, 2021.  ECF No. 46.

5        On September 17, 2021, Plaintiffs served the City with discovery in the form of

6   interrogatories, requests for production of documents, and requests for admissions.  On

7   September 29, 2021, the Parties agreed to extend the deadlines for the City to respond to this

8   discovery.  ECF No. 47.

9        The Court heard argument on the motions to dismiss the complaint and for preliminary

10  injunction on October 20, 2021, ECF No. 55, and entered its order on both motions on November

11  9, 2021, ECF No. 64.  In its order, the Court denied the motion for a preliminary injunction,

12  denied the City's motion to dismiss on certain of Plaintiffs' claims, and granted the City's

13  motion to dismiss other claims with leave to amend.  *Id.*

14       Settlement negotiations began in earnest almost immediately after issuance of this order,

15  and to facilitate a focus on these discussions, the Parties agreed to a continuance of the deadlines

16  for Defendant's responses to Plaintiffs' discovery.  ECF No. 65.  The Parties also agreed, with

17  the approval of the Court, to extend the time for Plaintiffs to amend the complaint.  ECF No. 67.

18  Subsequently, the Parties agreed, and the Court approved in part or in whole, a series of

19  stipulations to stay the litigation, including discovery, while settlement negotiations continued.

20  ECF No. 72 (Jan. 6, 2022); ECF No. 83 (Apr. 4, 2022); ECF No. 98 (June 27, 2022).  While the

21  Parties initiated settlement discussions on their own, further discussions were mediated by

22  Magistrate Judge Susan van Keulen.  ECF Nos. 68, 74-80, 82, 89-90, 92-96; *see also* II.B *infra*.

23  During this entire time, in order to permit settlement discussions to proceed, Plaintiffs insisted,

24  and the City agreed, that the City would not issue any citations or tow any OSVs for violations of

25  the Ordinances.  *Id*.

26       On August 24, 2022, counsel for the Parties informed the Court that a tentative settlement

27  had been reached, subject to approval by their clients and the Court.  ECF No. 99.  On August

28  30, 2022, September 11, 2022, and September 23, 2022, the parties further updated the Court on

1    the status of the tentative settlement.  ECF Nos. 102, 104, 106.  On September 28, 2022,

2    Plaintiffs filed their motion for leave to withdraw as counsel for one of the Named Plaintiffs, due

3    to their inability to communicate with him concerning the settlement.  ECF No. 110.

4        **B.    History of Settlement Negotiations**

5        On August 24, 2021, the parties stipulated to an ADR process consisting of an early

6    settlement conference with a Magistrate Judge following determination of the City's motion to

7    dismiss.  (Plaintiff's motion for preliminary injunction had not yet been filed.)  ECF No. 30.  On

8    August 31, 2021, the Court set the hearings on Plaintiffs' motion for preliminary injunction and

9    the City's motion to dismiss for October 20, 2021, and referred the case to Magistrate Judge van

10   Keulen for a settlement conference to be scheduled at her discretion.  ECF No. 35.  On

11   September 1, 2021, the Court ordered the parties to contact Judge van Keulen to schedule a

12   settlement conference following its rulings on the motions.  ECF No. 36.

13       On November 11, 2021, counsel for Defendant reached out to counsel for Plaintiffs to

14   commence private settlement negotiations.  Neff Decl. ¶ 13.  An initial negotiation session was

15   held by telephone on November 17, 2021.  *Id.*  On the basis of this initial discussion, the Parties

16   agreed to extend deadlines for amending the complaint and responding to discovery.  *Id.*  On

17   December 1, 2021, Plaintiffs' counsel sent a letter to Defendant's counsel setting forth a

18   comprehensive settlement proposal.  *Id.*  Defendant sent a written response on January 31, 2022.

19   *Id.*  Additional written proposals were subsequently exchanged.  *Id.*

20       For the entirety of settlement negotiations, Plaintiffs' counsel made clear that they would

21   not negotiate with Defendant concerning any request for attorney's fees until the Parties had

22   reached agreement on substantive relief for Plaintiffs and the proposed Class.  *Id.* ¶ 14.

23       Counsel for the parties met on numerous occasions via phone and videoconference from

24   December 2021 through August 2022.  *Id.* ¶ 15.  Beginning on March 9, 2022, counsel

25   participated, both jointly and separately, in approximately 10 settlement conferences and

26   informal discussions with Magistrate Judge van Keulen.  *Id.*; ECF Nos. 79, 80, 82, 92, 93, 95,

27   96.  During this time, counsel also continued to engage in direct communications with each other

28   and exchanged additional written proposals.  Neff Decl. ¶ 15.  These discussions were

**4**

1 occasionally contentious as each side strongly advocated their respective clients' interests, but

2 each side also made concessions that permitted the discussions to progress. *Id.* The discussions

3 culminated in the tentative settlement reached on August 24, 2022. *Id.*

4     **C.    Material Terms of the Proposed Settlement**

5     The Agreement, which is attached as Exhibit 2 to the Neff Declaration ("Ex. 2"), defines

6 a single class of "all persons who resided or sought to reside in an oversized vehicle within the

7 City of Mountain View at any time beginning from December 18, 2020, through the conclusion

8 of the Effective Period of this Agreement" (the "Settlement Class"). The key terms of the

9 agreement are set out below.

10     The "Effective Period" for the Agreement begins on the date of entry of Judgment and

11 ends four years after that date. Ex. 2 at 2.

12         1.    <u>OSV Parking Capacity</u>

13     During the Effective Period, the City shall ensure no less than three miles of street

14 segments are available for OSV parking. Ex. 2 at § 2. Each included street segment shall have

15 parking capacity for OSVs on both sides of the street. *Id.* A street segment has available parking

16 capacity for OSVs as long as the following restrictions and/or prohibitions do not apply to that

17 street segment: (1) the Narrow Streets Ordinance; (2) the Bike Lane Ordinance; (3) any

18 prohibition on parking from 2 a.m. to 6 a.m.; (4) any temporal restriction on parking for a period

19 of time less than 72 hours, including any metered parking; and (5) any prohibition on all parking.

20 *Id.*

21         2.    <u>Composite Parking Regulation Map</u>

22     The Agreement creates and attaches a Composite Parking Regulation Map that shows

23 where OSV residents may lawfully park. Ex. 2 § 1(A). The Map is to be distributed in a full-

24 color version at all times, and the City must update the Map within 15 business days of any

25 material change affecting the Map and prior to enforcing any such change. *Id.* at § 1(A), (B).

26 Distribution of the Map began on September 1, 2022. *Id.* at § 1(C). Mountain View police

27 officers must continue to distribute the Map, including providing a copy any time an officer

28 requests an OSV resident relocate or issues a parking citation, and officers may commence

1    issuing citations on October 1, 2022. *Id.* The Map shall be available in English, Spanish,

2    Russian, and Chinese. *Id.* The map must also be available on the City of Mountain View

3    website, as well as posted at city hall and the public library. *Id*.

### 3.    Enforcement and Dispute Resolution

5        Section 3(A) of the Agreement sets out the minimum amount of pre-towing notice the

6    City must give OSV residents.  An OSV may be immediately towed without other notice if the

7    OSV is parked in the path of traffic, is blocking a driveway, or when the OSV is occupied by a

8    repeat offender who has received no fewer than three parking citations under the Ordinances,

9    with at least 72 hours between citations. *Id.* at § 3(A)(i).  In all other circumstances, OSVs may

10   only be towed for violating the Ordinances 72 hours after at least one parking citation has been

11   issued, provided the citation was accompanied by a flyer (*see* Ex. C to Ex. 2) and a copy of the

12   Map. *Id.* at § 3(A)(ii).  The Agreement states that these are minimum requirements, and provides

13   that enforcement officers will have discretion to provide additional time or notification before

14   enforcement, if the officer determines that there is good cause to do so. *Id.* at § 3(A)(iii).

15   Enforcement will be conducted, to the greatest extent practicable, by the Mountain View Police

16   Department's Youth and Community Services Unit. *Id.* at § 3(A).

17       The Agreement provides a dispute resolution process for an individual Class Member to

18   contest an individual citation or tow of their OSV. *Id.* at § 3(B).  It also contains a more

19   comprehensive dispute resolution process for disputes about the interpretation or implementation

20   of the Agreement, including any disputes concerning a "pattern or practice" alleged to be in

21   violation of the enforcement procedures set forth in § 3. *Id.* at § 12.  This section requires the

22   Parties to endeavor to resolve disputes "as swiftly and inexpensively as possible," and to meet

23   and confer prior to seeking the assistance of the Court for resolution of any dispute. *Id.* at § 12.

### 4.    Reasonable Accommodation Requests Based on Disability

25       The Agreement provides that requests for reasonable accommodation will be made and

26   considered on a case-by-case basis. *Id.* at § 5(B).  Requests may be made during interactions

27   with police officers, by calling the number listed on a courtesy notification, or by filling out the

28   City of Mountain View ADA Grievance Form. *Id.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 5.    Attorneys' Fees

Consistent with the insistence by Plaintiffs' counsel that fees not be discussed prior to reaching agreement on all substantive terms, the Agreement provides that, following execution of the Agreement, the Parties will attempt to negotiate Plaintiffs' claim for attorneys' fees and costs, which the City contests. *Id.* at § 4.  Any amount of fees requested by Plaintiffs shall be submitted to the Court for approval pursuant to Federal Rule of Civil Procedure 23(h).  That motion for fees will be unopposed if the Parties have reached an agreement, or if they have not, it shall be a contested motion. *Id.* at § 4.  In any event, the amount of fees requested by Plaintiffs shall be based on the reasonable lodestar of counsel after billing judgment has been exercised.

### 6.    Class Release

In exchange for the substantial injunctive relief that the Parties' Agreement guarantees, class members will only release claims "that were [. . .] or could have been asserted in this case relating to the Ordinances, and based on the identical factual predicate as those alleged." Ex 1 at § 11(D).  Class member claims for damages are expressly excluded from this release. *Id.* at § 11(I).

## III.    LEGAL STANDARD

Settlement is "the preferred means of dispute resolution[,] . . . especially . . . in complex class action litigation." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).  Indeed, a "strong judicial policy" favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  Under Rule 23(e) of the Federal Rules of Civil Procedure, a class action settlement that is binding on absent class members requires court approval. *See Officers for Just.*, 688 F.2d at 623.  Approval is a two-step process: (1) preliminary approval of the settlement, and (2) after a notice period, final determination that the settlement is fair, reasonable, and adequate. *See Bakhtiar v. Info. Res., Inc.*, 2021 WL 4472606, at *5-6 (N.D. Cal. Feb. 10, 2021).

To grant preliminary approval, the court determines whether the class is proper for settlement purposes, and, if so, preliminarily certifies the class. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  To support class certification, a court must find each of

**7**

1   Rule 23(a)'s four requirements has been satisfied: (1) numerosity; (2) commonality;

2   (3) typicality; and (4) adequacy of representation.  In addition to these requirements, "parties

3   seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or

4   (3)."  *Id.* at 614.  The court must then determine whether the proposed class fulfills the criteria of

5   one of the three subsections of Rule 23(b).  *Id.*  The applicable provision here is Rule 23(b)(2),

6   which "permits class actions for declaratory or injunctive relief where 'the party opposing the

7   class has acted or refused to act on grounds generally applicable to the class.'"  *Id.* (quoting Fed.

8   R. Civ. P. 23(b)(2)).

9       At the preliminary approval stage, the Parties must "show that the court will likely be

10  able to" approve their proposed settlement under the Rule 23(e)(2) factors.  Fed. R. Civ. P.

11  23(e)(1)(B).  Rule 23(e)(2), in turn, requires courts to consider: (1) whether the class was

12  adequately represented; (2) whether the proposed settlement was negotiated at arm's length;

13  (3) whether the relief provided for the class is adequate, taking into account the costs, risks, and

14  delay of trial and appeal, the terms of any proposed award of attorneys' fees, and other facts; and

15  (4) whether the proposal treats class members equitably relative to one another.

16  **IV.    ARGUMENT**

17      **A.    The Proposed Settlement Class Meets the Requirements of Rule 23(a).**

18      Each of Rule 23(a)'s four requirements for class certification is satisfied for purposes of

19  the proposed Agreement and Settlement Class.

20          1.    The Settlement Class is Sufficiently Numerous.

21      The first element of Rule 23(a) requires that the class be "so numerous that joinder of all

22  members is impracticable."  Fed. R. Civ. P. 23(a)(1).  The numerosity requirement is "not tied to

23  any fixed numerical threshold"—courts generally find that classes with 40 or more members

24  satisfy it, but even much smaller classes can suffice.  *See Rannis v. Recchia*, 380 Fed. Appx. 646,

25  651 (9th Cir. 2010) (discussing standard, and affirming certification of 20-member class).  And

26  where, as here, plaintiffs seek only injunctive and declaratory relief, "the numerosity requirement

27  is relaxed and plaintiffs may rely on the reasonable inference arising from plaintiffs' other

28  evidence that the number of unknown and future members of [the] proposed [class] . . . is

**8**

1    sufficient to make joinder impracticable." *Sueoka v. United States*, 101 F. App'x 649, 653 (9th

2    Cir. 2004). Surveys conducted by the City of Mountain View found that the total inhabited

3    vehicles parked on the City's streets ranges between 250-300, with the most recent survey stating

4    that in July of 2020 there were 265 vehicles in which people were living, with 191 of those

5    classified as RVs.[3] Neff Decl., ¶ 25 & Ex. 3 at 2-3. This far exceeds the threshold for class

6    certification, and the Court should therefore find that the Settlement Class is sufficiently

7    numerous.

8                    2.       The Settlement Class Satisfies Commonality.

9            The second element of Rule 23(a) requires the existence of "questions of law or fact

10   common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is satisfied where the plaintiff

11   alleges the existence of "common contentions" such that "determination of [their] truth or falsity

12   will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-*

13   *Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). This does not "mean that *every* question

14   of law or fact must be common to the class." *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952,

15   957 (9th Cir. 2013) (emphasis in original) (citations omitted). "[F]or purposes of Rule 23(a)(2),

16   even a single common question" can establish commonality.[4] *Wal-Mart*, 564 U.S. at 359

17   (citation and internal quotation marks omitted); *see also Mazza v. Am. Honda Motor Co*., 666

18   F.3d 581, 589 (9th Cir. 2012).

19           Here, Plaintiffs challenged City-wide ordinances and related enforcement policies and

20   practices that apply to every member of the proposed class.[5] Compl. ¶¶ 16-19. The legality of

21

22   [3]      A somewhat more recent count conducted by volunteers found that there were 206
         inhabited OSVs parked on City streets in August 2021. *See* https://www.mv-
23       voice.com/news/2021/12/13/new-survey-finds-hundreds-of-inhabited-rvs-parked-on-mountain-
         views-city-streets#.YzSYFS7BTgI.link.

24   [4]      Rule 23(a)(2)'s commonality requirement is "less rigorous" than the predominance
         requirement of Rule 23(b)(3). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998);
25       *see also Wal-Mart*, 564 U.S. at 359 (distinguishing requirements).

26   [5]      This case raised numerous common questions of law and fact, including: (1) whether the
         Ordinances prevented Class Members from residing in or traveling to the City of Mountain
27       View; (2) whether the Ordinances were justified by a compelling government interest; (3)
         whether the Ordinances were narrowly tailored to serve any such compelling government
28       interest; (4) whether Named Plaintiffs and other Class Members had any practically available

1    the Ordinances and associated policies and practices is a question "capable of classwide

2    resolution," *see Wal-Mart*, 564 U.S. at 350, and where a lawsuit seeks a determination regarding

3    "systemic policies and practices" that affect all of the putative class members—as this case did—

4    Rule 23(a)'s commonality requirement is met.  *See Parsons*, 754 F.3d at 681 (discussing cases);

5    *see also B.K. by her next friend Tinsley v. Snyder*, 922 F.3d 957, 969 (9th Cir. 2019) (finding

6    commonality despite possible differences among class members, and holding that challenge to

7    systemic "policies and practices [was] the 'glue' that h[eld] together the putative class"); *Gray v.*

8    *Golden Gate Nat'l Recreational Area*, 279 F.R.D. 501, 512 (N.D. Cal. 2011) (finding

9    commonality satisfied where plaintiffs challenged "uniform policies and practices of failing to

10   ensure" accessibility for people with disabilities).  Moreover, the relief achieved through the

11   Parties' Agreement will redound to every member of the settlement class.  *See* § II(C) above.

12        The Court should thus find that the proposed Settlement Class satisfies Rule 23(a)'s

13   commonality requirement.

14              3.    The Named Plaintiffs' Claims are Typical.

15        The third element of Rule 23(a) requires that the claims of the representative parties are

16   typical of each class member. Fed. R. Civ. P. 23(a)(3).  "Under [Rule 23(a)(3)'s] permissive

17   standards, representative claims are 'typical' if they are reasonably coextensive with those of

18   absent class members; they need not be substantially identical."  *Parsons*, 754 F.3d at 685

19   (quoting *Hanlon*, 150 F.3d at 1020).  "The requirement of typicality is not primarily concerned

20   with whether each person in a proposed class suffers the same type of damages; rather, it is

21   sufficient for typicality if the plaintiff endured a course of conduct directed against the class."

22   *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017); *see also Hanon v. Dataproducts*

23   *Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) ("Typicality refers to the nature of the claim or defense

24

25   _____

26   alternative to sheltering in their OSVs in Mountain View; (5) whether the Ordinances violated
     one or more constitutional or statutory provisions; (6) whether Named Plaintiffs and other Class
27   Members were at risk that their OSVs, along with their personal belongings, will be impounded
     by the City without sufficient notice; and (7) whether Named Plaintiffs and other Class Members
28   were entitled to equitable relief, including system-wide policy changes, to address the alleged
     constitutional and statutory violations associated with the Ordinances and their enforcement.
     Compl. ¶ 19.

1    of the class representative, and not to the specific facts from which it arose or the relief sought")

2    (citation omitted).  Because typicality overlaps with commonality, a finding of commonality

3    usually supports a finding of typicality.  *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147,

4    157 n.13 (1982) (commonality and typicality requirements frequently "merge").

5           Here, Named Plaintiffs and every member of the proposed settlement class suffered

6    alleged injuries attributable to the same alleged "course of conduct": the City's enactment of the

7    Ordinances, and its planned policies and practices relating to enforcement of the same.  *See*

8    Compl. ¶¶ 16-19; *see also Just Film*, 847 F.3d at 1117-18 (plaintiff's claims were typical

9    because her injuries "stem[med] from the same scheme" and she could prove "nature" of the

10   violation "for the benefit of all class members").  The legal theories that Named Plaintiffs would

11   have relied on to redress this harm apply equally to each member of the proposed Settlement

12   Class, and the relief Plaintiffs have achieved will benefit that class as a whole.  *See supra* § II(C);

13   *see also* Compl. at ¶¶ 19-24.

14                   4.      Named Plaintiffs and Class Counsel are Adequate Representatives.

15          The final element of Rule 23(a) requires that the "representative parties will fairly and

16   adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  To satisfy this element,

17   the named plaintiffs and their counsel must not have any conflicts of interest with the other class

18   members, and the named plaintiffs and their counsel must pursue the action vigorously on the

19   class's behalf.  *Hanlon*, 150 F.3d at 1020.  Class counsel may demonstrate their qualifications

20   with previous experience litigating class action lawsuits.  *See id.* at 1021.  And adequate

21   representation of counsel is generally presumed in the absence of contrary evidence.

22   *Californians for Disability Rights, Inc. v. California Dep't of Transp.*, 249 F.R.D. 334, 349 (N.D.

23   Cal. 2008).

24          There are no conflicts between the Named Plaintiffs and other Class Members.

25   Declaration of Celerina Navarro ("Navarro Decl.") ¶ 6; Declaration of Janet Stevens ("Stevens

26   Decl.") ¶ 7; Declaration of Armando Covarrubias ("Covarrubias Decl.") ¶ 6; Declaration of

27   Evelyn Estrada ("Estrada Decl.") ¶ 6; Declaration of Alma Aldaco ("Aldaco Decl.") ¶ 6.

28   Plaintiffs are directly affected by the Ordinances and related policies and practices that they

1  challenge in this case, and the Parties' Agreement provides the same injunctive relief for them

2  and every member of the proposed class.  *See* § II(C), above; *see* Compl. at ¶¶ 19-24; Navarro

3  Decl. ¶ 8; Stevens Decl. ¶ 9; Covarrubias Decl. ¶ 8; Estrada Decl. ¶ 8; Aldaco Decl. ¶ 8.; *see also*

4  *Am. Council of the Blind v. Astrue*, No. C05-04696 WHA, 2008 WL 4279674, at *6 (N.D. Cal.

5  Sept. 11, 2008) (holding that where Plaintiffs do not seek monetary damages, "[t]he potential for

6  any conflict or collusion is . . . minimal").

7       In addition, Named Plaintiffs have vigorously represented the class and pursued this

8  outcome on behalf of the Settlement Class: they have knowledge of the case and their duties as

9  class representatives, have stayed reasonably informed about the case, have participated in

10  settlement negotiations, and have reviewed and support the Agreement.  Navarro Decl. ¶¶ 4-7;

11  Stevens Decl. ¶¶ 5-8; Covarrubias Decl. ¶¶ 4-7; Estrada Decl. ¶¶ 4-7; Aldaco Decl. ¶¶ 4-7.

12       Class counsel have extensive experience litigating class action suits, including other

13  similar civil rights class actions and class actions challenging government policies.  Neff Decl.

14  ¶¶ 2-12; Declaration of Thomas Zito ("Zito Decl.") ¶¶ 3-12; Declaration of William Freeman

15  ("Freeman Decl.") ¶¶ 3-7; Declaration of Quyen Ta ("Ta Decl.") ¶¶ 3-7.  Class counsel also have

16  expertise in government policies impacting unhoused populations and the legal rights of

17  unhoused people.  *Id.*  Class counsel thoroughly investigated the claims and spent over a year

18  vigorously litigating this action, including moving for injunctive relief, propounding extensive

19  discovery, and engaging in months of negotiation.  Zito Decl. ¶¶ 13-19.  Prior to filing the instant

20  litigation, Class counsel advocated zealously on behalf of the class to persuade the City not to

21  adopt the OSV ordinance.  *Id.*  In addition, Class counsel properly refused to negotiate a demand

22  for payment of attorney's fees and costs until after reaching a tentative settlement with the City

23  on all other aspects of the litigation, in order to avoid even the appearance of any conflict

24  between the interests of counsel and the interests of the Class.  Neff Decl. ¶ 14.

25       Based on Class counsel's experience litigating novel and complex cases against public

26  entities (including cases involving the rights of unhoused people), the injunctive terms and other

27  provisions contained in the Parties' Agreement will adequately protect the constitutional and

28  statutory rights of Plaintiffs and other class members that this case sought to vindicate.  Neff

1   Decl. ¶ 24; Zito Decl. ¶ 29; Freeman Decl. ¶ 9; Ta Decl. ¶ 12.  Moreover, Class Counsel are

2   well-aware that attempting to reach a resolution through additional litigation could have taken

3   years and, due to the novel nature of the claims, might not have yielded a resolution as favorable

4   as that contained in the proposed Agreement.  Neff Decl. ¶¶ 21-24; Zito Decl. ¶¶ 26-29; Freeman

5   Decl. ¶ 9; Ta Decl. ¶ 12.  The Court should find that Rule 23(a)(4)'s adequacy requirement is

6   met.

7        **B.**    **The Proposed Settlement Class Meets the Requirements of Rule 23(b)(2).**

8        Rule 23(b)(2), which requires that the defendant "has acted or refused to act on grounds

9   that apply generally to the class, so that final injunctive relief or corresponding declaratory relief

10  is appropriate respecting the class as a whole," was designed to facilitate civil rights class actions

11  such as this one.  *See* Fed. R. Civ. P. 23(b)(2).  "Civil rights cases against parties charged with

12  unlawful, class-based discrimination are prime examples" of the purpose of this rule.  *Amchem*

13  *Prods.*, 521 U.S. at 614; *see also Parsons v. Ryan*, 754 F.3d 657, 686 (9th Cir. 2014) (The

14  primary role of this rule "has always been the certification of civil rights class actions."); *Baby*

15  *Neal for & by Kanter v. Casey*, 43 F.3d 48, 64 (3d Cir. 1994) ("The writers of Rule 23 intended

16  that subsection (b)(2) foster institutional reform by facilitating suits that challenge widespread

17  rights violations of people who are individually unable to vindicate their own rights.").  The rule

18  is "almost automatically satisfied in actions primarily seeking injunctive relief."  *Gray v. Golden*

19  *Gate Nat'l Recreational Area*, 279 F.R.D. 501, 520 (N.D. Cal. 2011) (quoting *Baby Neal for and*

20  *by Kanter v. Casey*, 43 F.3d 48, 58 (3rd Cir. 1994)).

21       Certifying the proposed settlement class under Rule 23(b)(2) is appropriate because under

22  the Agreement, all Plaintiffs and all members of the proposed Class will benefit from the

23  guaranteed three miles of OSV parking capacity, clear map of where OSV parking is possible,

24  modified enforcement practices, and other certainties that the Agreement provides.  *See* Ex. 2.

25  Certification is also appropriate because the Agreement provides only injunctive relief to the

26  class and does not release class member claims for damages.

27       **C.**    **The Proposed Settlement Should be Preliminarily Approved.**

28       In making a final fairness determination on a class settlement, Rule 23 requires courts to

1   consider: (1) whether the class was adequately represented; (2) whether the proposed settlement

2   was negotiated at arm's length; (3) whether the relief provided for the class is adequate, taking

3   into account the costs, risks, and delay of trial and appeal, the terms of any proposed award of

4   attorneys' fees, and other facts; and (4) whether the proposal treats class members equitably

5   relative to one another.  Fed. R. Civ. P. 23(e)(2); *see also Lane v. Facebook, Inc.*, 696 F.3d 811,

6   819 (9th Cir. 2012).  Following amendments in 2018, Rule 23(e) now "clarifies that preliminary

7   approval should only be granted where the parties have 'shown that the court *will likely be able*

8   *to* . . . approve the proposal under [the final approval factors] in Rule 23(e)(2).  Review at the

9   preliminary approval stage is thus increasingly robust."  *In re MyFord Touch Consumer Litig.*,

10  No. 13-CV-03072-EMC, 2019 WL 1411510, at *4 (N.D. Cal. Mar. 28, 2019) (emphasis

11  original).[6]

12          1.     Plaintiffs and Their Counsel Have Adequately Represented The Class.

13          In determining whether a class has been adequately represented, courts consider the same

14  "adequacy of representation" questions that are relevant to class certification.  *See MyFord*

15  *Touch*, 2019 WL 1411510 at *8; *O'Connor v. Uber Techs., Inc.*, No. 13-CV-03826-EMC, 2019

16  WL 1437101, at *6 (N.D. Cal. Mar. 29, 2019).  As discussed above, in § IV(A)(4), this

17  requirement is satisfied in a number of ways.  First, class counsel engaged in extensive

18  investigation and advocacy prior to filing suit.  Zito Decl. ¶¶ 13-19.  Second, counsel and the

19  Class vigorously prosecuted the action through a preliminary injunction motion, defending

20  against a motion to dismiss, and propounding discovery.  *See* ECF Nos. 26, 33, 41, 43, 49, 50,

21  63, 67.  Lastly, Named Plaintiffs have stayed engaged and involved and represented the interests

22  of the class, including by providing information and input throughout the Parties' settlement

23  negotiations.  Navarro Decl. ¶¶ 4-7; Stevens Decl. ¶¶ 5-8; Covarrubias Decl. ¶¶ 4-7; Estrada

24

25  [6]      These new Rule 23(e)(2) factors are not intended to "'displace' any factors currently
26  used" by Ninth Circuit courts, "but instead aim to focus the court and attorneys on 'the core
    concerns of procedure and substance that should guide the decision whether to approve the
27  proposal.'"  *In re Extreme Networks, Inc. Sec. Litig.*, No. 15-CV-04883-BLF, 2019 WL
    3290770, at *6 (N.D. Cal. July 22, 2019) (discussing and quoting Advisory Committee's note to
28  2018 amendment).  The amended rule "therefore directs the parties to present the settlement to
    the court in terms of a shorter list" of factors that "should always matter" when making this
    decision.  Advisory Committee Notes to 2018 Amendments, Fed. R. Civ. P. 23(e)(2).

1    Decl. ¶¶ 4-7; Aldaco Decl. ¶¶ 4-7.

2              2.    The Proposed Settlement Was Negotiated at Arm's Length.

3              The proposed settlement was reached after more than nine months of arm's-length

4    negotiations, including exchanges of written proposals, numerous in-person conferences among

5    counsel, and numerous settlement conferences under the supervision of Magistrate Judge van

6    Keulen.  While no presumption of fairness attaches to settlements achieved through arms-length

7    negotiations, *see Roes 1-2*, 2019 WL 6721190 at *10, such negotiations do weigh in favor of

8    approval.[7]  Fed. R. Civ. P. 23(e)(2)(B).  And, as the Advisory Committee has recognized, "the

9    involvement of a neutral or court-affiliated mediator or facilitator . . . may bear on whether

10   [negotiations] were conducted in a manner that would protect and further the class interests."

11   Advisory Committee Notes to 2018 Amendments, Fed. R. Civ. P. 23(e)(2).  Where, as here, an

12   agreement is the product of "serious, informed, non-collusive negotiations" conducted by

13   experienced counsel over an "extended period of time," courts routinely find that preliminary

14   approval is appropriate.  *See, e.g., In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079-80.

15             Furthermore, Class counsel has refused to negotiate attorneys' fees and costs until after

16   the settlement was completed and approved by Plaintiffs.  Neff Decl. ¶ 14.  Another indicia of

17   appropriateness of the arm's-length negotiations are the lack of "clear sailing" agreements or

18   other negotiations concerning fees.  *See, e.g., In re Extreme Networks, Inc. Sec. Litig.*, No. 15-

19   CV-04883-BLF, 2019 WL 3290770, at *7 (N.D. Cal. July 22, 2019) (scrutinizing pre-class

20   certification settlement signs of collusion including when and how attorney's fees are

21   negotiated).

22             3.    The Relief Provided for the Class is Adequate.

23             The third factor requires courts to consider whether "the relief provided for the class is

24   adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the

25

26   ─────────────────────

27   [7]    The considerations encompassed by new Rule 23(e)(b)(2) overlap with those
     contemplated by "certain *Hanlon* factors, such as the non-collusive nature of negotiations, the
     extent of discovery completed, and the stage of proceedings."  *In re Extreme Networks, Inc. Sec.*
28   *Litig.*, No. 15-CV-04883-BLF, 2019 WL 3290770, at *7 (N.D. Cal. July 22, 2019) (citing
     *Hanlon*, 150 F.3d at 1026).

1    effectiveness of any proposed method of distributing relief to the class, including the method of

2    processing class-member claims; (iii) the terms of any proposed award of attorney's fees,

3    including timing of payments; and (iv) any agreement required to be identified under Rule

4    23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C).

5                          *a.      Adequacy of Relief*

6          In their complaint, Plaintiffs alleged—and believed they could prove[8]—that enforcement

7    of the Ordinances when this case was filed would have effectively banned OSV parking at any

8    time of the day or night on over 89% of the City's streets, not to mention the unavailability of

9    24-hour parking on most other streets, due to other ordinances, restrictions, and obstacles.

10   Compl. ¶ 51.  Moreover, even if OSV parking were available on some streets, Plaintiffs alleged

11   they had no ready means to learn what those streets were, as the City refused to publish a map

12   showing where legal OSV parking was possible. *Id.* ¶ 53.

13         At the time Plaintiffs filed this case, signs were already being erected throughout the City

14   to enable Defendant to enforce the Ordinances. *Id.* ¶ 52.  Plaintiffs alleged they had been warned

15   that enforcement would be "complaint driven," meaning that they could be penalized in response

16   to a neighbor's objection to their presence, but had no way to know when, if, or how

17   enforcement would occur. *Id.* ¶ 53.  As a result, they lived in uncertainty and fear that they could

18   at any moment be subject to catastrophic fines, immediate tows, and the loss of their homes and

19   possessions. *Id.* ¶¶ 55-56.  These risks and dangers were exacerbated for Plaintiffs and class

20   members with disabilities. *Id.* ¶¶ 60-63.  Plaintiffs alleged the City had no identifiable process

21

22   _____

23   [8]     Plaintiffs acknowledge that Defendant disputes many of these allegations. The fact that
     these allegations and any defenses were contested and remained to be proven at trial presented
24   both parties with significant costs and litigation risks, which militated in favor of a negotiated
     settlement. *See, e.g., In re Aqua Metals, Inc. Sec. Litig.*, No. 17-cv-07142-HSG, 2022 WL
25   612804, at *6 (N.D. Cal. Mar. 2, 2022) (Approval of a class settlement found to be appropriate
     where plaintiffs "must overcome significant barriers to make their case" and "defendants would
26   'strenuously' dispute whether class certification is appropriate and also contest each element of
     the causes of action…."); *Garner v. State Farm Mut. Auto Ins. Co.*, No. CV 08 1365 CW (EMC),
27   2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (where defendant raised "significant
     challenges to Plaintiffs' claims," court held that "it is the very uncertainty of outcome in
28   litigation and avoidance of wasteful and expensive litigation that induce consensual
     settlements.")) (citation omitted).

1   for accommodating the needs of persons with disabilities in enforcing the Ordinances.  *Id.* ¶ 64.

2           During the Effective Period, the Agreement will provide significant, life-altering benefits

3   for members of the Class, which will remove the daily uncertainty and insecurity about where

4   they can park their vehicles, relieve them from the fear of crushing fines and immediate towing,

5   and help them to live in their home city as productive members of the community.  The City's

6   agreement to keep 3 miles of streets available for OSV parking free from the restrictions

7   imposed by the Ordinances, Ex. 2 § 2, gives Class members the security of knowing they can

8   park their vehicles overnight without fear of being ticketed or towed.  The City's agreement, for

9   the first time, to publish, distribute, and update a map that clearly identifies the location of these

10  available streets, *id.* § 1(A)-(C), means that Class members are not forced into a scavenger hunt

11  to locate them.  Under the Agreement, except for immediate risks to traffic safety, Class

12  members cannot be towed for violating the Ordinances without receiving 72-hour advance notice

13  and a copy of the map, *id.* § 3(A), giving them an opportunity to move to one of the available

14  streets.  The Agreement also guarantees a specific process for people with disabilities to request

15  a reasonable accommodation, *id.* § 5(B), and states that police officers have discretion to provide

16  additional time or notice before towing an OSV, *id.* § 3(A)(iii).  The City's agreement to a

17  dispute resolution process for both individual complaints, *id.* § 3(B) and any allegations of

18  "pattern or practice" violations of the Agreement, *id.* § 12, provide additional, substantial

19  procedural protections.[9]

20

21  ─────────────
    [9]      Pursuant to this District's Procedural Guidance for Class Action Settlements, Plaintiffs'
    counsel refer the Court to the one comparable recent settlement of which they are aware. *Geary*
22  *v. City of Pacifica,* No. 3:21-cv-1780-VC (N.D. Cal.) was a putative class action brought by
    OSV residents against the City of Pacifica, which had enacted an ordinance prohibiting the
23  parking of OSVs on "narrow streets" and other streets deemed "unsafe for traffic."  The case was
    settled on a non-class basis with the Court entering a stipulated injunction, ECF No. 76 (Apr. 6,
24  2022), requiring the City: to refund fines previously levied under the ordinance; to maintain at
    least 2 miles of streets "allowable" for OSV parking; to publish, distribute, and keep updated a
25  map showing the "allowable" streets; to establish a 13-space "safe parking" program for a period
    of at least three years; to provide limited dumping and trash disposal services for OSV dwellers;
26  and to provide a process for considering accommodations for persons with disabilities.  Two of
    the organizations serving as class counsel in this case—The ACLU Foundation of Northern
27  California and Disability Rights Advocates—also served at counsel for plaintiffs in that case.
    Taking into account the differences between the two municipalities and the ordinances in
28  question, the settlement terms in these two cases are roughly equivalent, and similarly beneficial
    for each City's vehicularly-housed residents. Zito Decl. ¶¶ 20-25; Freeman Decl. ¶ 10.

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:21-cv-05381-NC

1    For these reasons, Named Plaintiffs, having reviewed the Agreement, agree that it

2    provides important benefits to them and the Class, and request that the Court approve the

3    Settlement. Navarro Decl. ¶¶ 7-8; Stevens Decl. ¶¶ 8-9; Covarrubias Decl. ¶¶ 7-8; Estrada Decl.

4    ¶¶ 7-8; Aldaco Decl. ¶¶ 7-8.

5                    ***b.        Costs, Risks, and Delay of Trial and Appeal***

6    In considering "the costs, risks, and delay of trial and appeal," courts in the Ninth Circuit

7    evaluate "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of

8    further litigation; [and] the risk of maintaining class action status throughout the trial." *Hanlon*,

9    150 F.3d at 1026.

10   Here, many of Plaintiffs' claims have already survived the City's motion to dismiss, and

11   even for the claims the Court dismissed, Plaintiffs were granted leave to amend.  ECF No. 64 at

12   15.  Plaintiffs are thus confident in the strength of their case.  However, Plaintiffs also

13   acknowledge that even after surviving a motion to dismiss, they would have had to present

14   sufficient evidence in support of their claims to persuade a trier of fact.  In addition, because the

15   Court denied their motion for a preliminary injunction, without the stay of enforcement agreed to

16   by the Parties to facilitate settlement negotiations, Defendant could have begun to enforce the

17   Ordinances as written while Plaintiffs pursued this action.  Moreover, even if Plaintiffs had won

18   a contested motion for class certification, prevailed on the merits, and fought off any appeals,

19   that process would likely have taken years and cost hundreds of thousands of additional dollars

20   in attorneys' fees and costs.  And for as long as this action remained pending, OSV residents of

21   Mountain View would lack certainty about their ability to remain in their homes in the future.

22   The benefits to Class Members of having certainty and clarity about where they can park their

23   OSVs and all the other benefits the Agreement provides now, rather than after waiting years for

24   this action to resolve, are significant.

25                    ***c.        Effectiveness of Proposed Method of Distributing Relief***

26   Because this is a Rule 23(b)(2) class that seeks only injunctive relief, all Class Members

27   will receive the same relief, which will largely be carried out by the City.  This will include the

28   City's distribution of the Composite Parking Regulation Map, maintenance of three miles of

1   street segments with available parking capacity for OSVs, and towing of OSVs only after the

2   notice as required by the Agreement.  This relief directly addresses the alleged injuries Plaintiffs

3   sought to mitigate in bringing this action, and it will provide equal relief for all Class Members.

### d.   Proposed Attorneys' Fees

5        The amount of attorneys' fees to be awarded to class counsel has not yet been

6   determined, but will be sought in accordance with requirements set out in the Agreement.  The

7   Agreement provides that no later than 30 days after the Settlement Agreement is preliminarily

8   approved by the Court, Plaintiffs shall provide the City with the amount sought in attorneys' fees

9   and costs, including detailed billing statements.  Ex. 2 § 4.  Then, pursuant to Rule 23(h),

10  Plaintiffs' counsel will move the Court for approval of reasonable attorneys' fees, expenses, and

11  costs.  *Id.*  The Parties will attempt to reach an agreement on the amount of Plaintiffs' attorneys'

12  fees and costs (in an amount that would then be subject to the Court's approval), but if  they

13  cannot reach agreement the City retains the right to oppose Plaintiffs' motion for fees on any

14  applicable ground.  *Id.*

15       The fact that the Parties did not negotiate over attorneys' fees prior to settling the

16  litigation (and that there is no "clear sailing" promise not to contest Plaintiffs' fees) further

17  indicates the absence of conflict between Plaintiffs' counsel and the Class, and supports

18  preliminary approval of the Settlement.  *See e.g.*, *In re Bluetooth Headset Prod. Liab. Litig.*, 654

19  F.3d 935, 949 (9th Cir. 2011) (noting, by contrast, that "clear sailing" provisions regarding fees

20  are disfavored, and potentially indicative of collusion).

### e.   The Class Release is only for claims that were or could have been asserted in this case, and that are based on an  identical factual predicate; class member claims for damages are expressly excluded

24       As noted above, in exchange for the substantial injunctive relief that the Parties'

25  Agreement guarantees, Class Members will only release claims "that were [. . .] or could have

26  been asserted in this case relating to the Ordinances, and based on the identical factual predicate

27  as those alleged."  Ex. 2 at § 11(D).  Class Members' claims for damages are expressly excluded

28  from this release.  *Id.* at § 11(I).  Courts routinely approve such class releases.  *See Hesse v.*

*Sprint Corp.*, 598 F.3d 581, 590–91 (9th Cir. 2010) (holding that class release is appropriate, as long as any released claim is "based on the identical factual predicate as that underlying the claims in the settled class action") (citation and quotation marks omitted).  There are no other cases impacted by the settlement or release of claims.

4.    <u>The Proposal Treats Class Members Equitably.</u>

Under the proposed settlement, and as described above, all Class Members will receive exactly the same injunctive relief: a map that shows where they may lawfully park, at least three miles of available parking for their OSVs, notice via citation prior to towing of their OSVs,[10] a guaranteed process to request accommodations, and a dispute resolution process.  Because the Parties' Agreement treats Plaintiffs and all other "class members equitably relative to each other," the Court should find that this factor weighs in favor of preliminary approval and, in consideration of all the other factors, grant preliminary approval of the settlement.  *See* Fed. R. Civ. P. 23(e)(2)(D).  Also here, none of the Named Plaintiffs receive any special treatment or incentive awards under the Agreement.

**D.    The Proposed Notice Form and Notice Plan Are Appropriate.**

Notice to a settlement class certified under Rule 23(b)(2) is within the Court's discretion. Fed. R. Civ. P. 23(c)(2)(a), (e)(1).  Notice provided under Rule 23(e) must "generally describe[ ] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Lane*, 696 F.3d at 826 (alteration in original) (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009)).  The Parties' proposed form of notice meets this standard.

The Parties have agreed to provide notice to the Settlement Class upon preliminary approval of the class-wide settlement in a manner that will effectively inform the class about the settlement and their right to object.  Once approved, the attached notice form, *see* Neff Decl., Ex. 4, Proposed Notice Form, will be distributed as follows: (1) the City will conspicuously place a copy of the court-approved notice on each OSV parked within the City; will cause notice to be

---

[10]    Except under the limited circumstances noted in § II(C)(3), above.

20

published in periodicals of general circulation in the City and surrounding communities, the City's website, at the Mountain View Public Library, and at the Mountain View City Hall; and (2) Plaintiffs will provide information concerning the Settlement to local non-profit organizations that provides services to unhoused individuals and individuals living in OSVs in the City and surrounding communities.  Ex. 2 § 9.

The content of the notice is also appropriate.  It explains the basis of this lawsuit, summarizes the terms of the Agreement, and informs Class Members of their rights, including their right to object to the settlement.  *See* Ex. 4.  The proposed notice form and plan satisfy Rules 23(c)(2) and (e)(1) as well as the Northern District's procedural guidelines pertaining to class settlements.

  **E.**  **The City Will Provide Notice to Federal and State Officials as Required by CAFA.**

In addition to providing notice to members of the proposed class, the City will provide notice of the Parties' proposed Agreement to appropriate federal and state officials, as required under 28 U.S.C. § 1715.  Aside from the notice provisions of 28 U.S.C. § 1715(b) and the requirement that such notice be given at least 90 days before this Court grants final approval, 28 U.S.C. § 1715(d), the substantive provisions of CAFA do not apply to this injunctive relief settlement.

  **F.**  **Proposed Schedule and Deadlines.**

If the Court preliminarily approves the settlement and notice, and certifies the Settlement Class, Plaintiffs propose the following deadlines and schedule for delivery of notice, receipt of objections, and filing of motions for final approval and request for approval of award of attorneys' fees and costs:

- The City to provide notice as required by CAFA: within 10 days of the filing of this motion;
- Parties to provide notice to the class: within 20 days of the Court preliminarily approving the settlement (including approval of the proposed notice plan and the proposed form of notice);

1    • Fairness Hearing to be held by this Court: February 15, 2023 at 1 p.m. by Zoom
2      conference; the hearing shall be to determine whether the Parties' Settlement
3      Agreement shall be granted final approval and the amount of any award of
4      attorneys' fees and costs incurred by Plaintiffs' counsel;
5    • Deadline to file any Objections to the Settlement with the Court: January 20,
6      2023;
7    • Deadline for the Parties to file responses to Objections: February 1, 2023;
8    • Deadline for Plaintiffs to file their Motion for Final Approval of Settlement, along
9      with any declarations of provision of notice: December 22, 2022;
10   • Deadline for Plaintiffs to file their Motion for Award of Attorneys' Fees and
11     Costs: December 16, 2022.
12       ○ If Plaintiffs' Motion for Award of Attorneys' Fees and Costs is opposed,
13         deadline for the City to file its Opposition: January 12, 2023.
14       ○ Deadline for Plaintiffs to file any Reply: January 26, 2023.

15   **V.    CONCLUSION**

16       The settlement of this litigation achieves important benefits for Plaintiffs and all members

of the Class.  Plaintiffs respectfully request that the Court enter the attached proposed order

preliminarily approving the Agreement, preliminarily certifying the proposed class, and

approving the proposed notice form and notice plan.

20

21

22

23

24

25

26

27

28

1  Dated: October 21, 2022

2

3    /s/ Erin Neff                                         /s/ William S. Freeman
Erin Neff                                               William S. Freeman

4  Karen Kontz                                       Grayce Zelphin
LAW FOUNDATION OF SILICON        Brandon Greene

5  VALLEY                                   AMERICAN CIVIL LIBERTIES UNION
                                             FOUNDATION OF NORTHERN

6                                           CALIFORNIA

7    /s/ Thomas Zito                      

8  Thomas Zito
Sean Betouliere                               *Attorneys for Plaintiffs*

9  DISABILITY RIGHTS ADVOCATES

10

11    /s/ Quyen L. Ta               
Quyen L. Ta

12  Arwen R. Johnson
Kelly Perigoe

13  Samuel R. Diamant
Rachel Rubens

14  KING & SPALDING LLP

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:21-cv-05381-NC