1    ERIN NEFF (SBN 326579)                      WILLIAM S. FREEMAN (SBN 82002)
     erin.neff@lawfoundation.org                 wfreeman@aclunc.org
2    KAREN E. KONTZ (SBN 300918)                 GRAYCE ZELPHIN (SBN 279112)
     karen.kontz@lawfoundation.org               gzelphin@aclunc.org
3    LAW FOUNDATION OF SILICON                   BRANDON GREENE (SBN 293783)
     VALLEY                                      bgreene@aclunc.org
4    4 North Second Street, Suite 1300           AMERICAN CIVIL LIBERTIES UNION
     San Jose, CA 95113                          FOUNDATION OF NORTHERN
5    Telephone:  (408) 280-2410                  CALIFORNIA
     Facsimile:  (408) 293-0106                  39 Drumm Street
6                                                San Francisco, CA 94111
     THOMAS ZITO (SBN 304629)                    Telephone: (415) 621-2493
7    tzito@dralegal.org                          Facsimile: (415) 255-8437
     SEAN BETOULIERE (SBN 308645)
8    sbetouliere@dralegal.org                    QUYEN L. TA (SBN 229956)
     DISABILITY RIGHTS ADVOCATES                 qta@kslaw.com
9    2001 Center Street, 4th Floor               ARWEN R. JOHNSON (SBN 247583)
     Berkeley, California 94704-1204             ajohnson@kslaw.com
10   Telephone: (510) 665-8644                   KELLY PERIGOE (SBN 268872)
     Facsimile: (510) 665-8511                   kperigoe@kslaw.com
11                                               SAMUEL R. DIAMANT (SBN 288738)
     DEANNA L. KWONG (SBN 233480)                sdiamant@kslaw.com
12   deanna.l.kwong@hpe.com                      RACHEL RUBENS (SBN 333886)
     HEWLETT PACKARD ENTERPRISE                  rrubens@kslaw.com
13   6280 America Center Drive                   KING & SPALDING LLP
     San Jose, CA 95002                          50 California Street, Suite 3300
14   Telephone: (650) 258-3307                   San Francisco, CA 94111
     *Pro Bono Counsel*                          Telephone:  (415) 318-1227
15
16   *Attorneys for Plaintiffs*

17                **UNITED STATES DISTRICT COURT**

18                **NORTHERN DISTRICT OF CALIFORNIA**

19                **SAN JOSE DIVISION**

20

21   CELERINA NAVARRO, JANET STEVENS,        | **Case No. 5:21-cv-05381-NC**
     ARMANDO COVARRUBIAS, EVELYN
22   ESTRADA, GABRIEL RANGEL JAIME,          | **PLAINTIFFS' UNOPPOSED MOTION**
     ALMA ALDACO, and all others similarly   | **FOR ATTORNEYS' FEES AND COSTS**
23   situated,
                                             | Date:    February 15, 2023
24            Plaintiffs,                    | Time:    1:00 p.m.
                                             | Place:   Courtroom 5, 4th Floor,
25   v.                                      |          San Jose Courthouse
                                             | Judge:   Hon. Nathanael Cousins
26   THE CITY OF MOUNTAIN VIEW,,

27            Defendant..

28

1

# TABLE OF CONTENTS

2   I.      Introduction...........................................................................................................1

3   II.     Factual Background Regarding Fee Negotiations ..............................................1

4   III.    Argument .............................................................................................................3

5           A.      Plaintiffs are the prevailing party, and are entitled to their
                    reasonable attorneys' fees and costs. .......................................................3
6
7           B.      The Agreed Amount of $750,000—a significant reduction from
                    Plaintiffs' full lodestar—is reasonable and should be approved. ...........4

8                   1.      Plaintiffs have achieved excellent relief for the class, and
                            the changes they fought for will benefit all inhabitants of
9                           oversized vehicles in Mountain View. ........................................5

10                  2.      Plaintiffs' full lodestar is the presumptively-reasonable fee,
                            and the Parties' agreed-upon award represents a significant
11                          reduction from this amount..........................................................6

12                  3.      The standard hourly rates for Plaintiffs' counsel are in line
                            with those charged by other Northern District lawyers of
13                          similar skill,experience, and reputation, supporting the
                            reasonableness of the Parties' agreed award...............................7
14
15                  4.      While the Parties' negotiated fee award does not reflect a
                            lodestar multiplier, one would have been appropriate in this
16                          case...............................................................................................12

17                  5.      Plaintiffs are entitled to recover their reasonable litigation
                            costs.............................................................................................12

18  IV.     Conclusion ........................................................................................................13

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*Barrios v. Cal. Interscholastic Fed'n,*

4

   277 F.3d 1128 (9th Cir. 2002) .............................................................................. 3, 4

5

*Folsom v. Butte Cty. Assn. of Gov'ts,*

6

   32 Cal. 3d 668 (1982) ............................................................................................ 4

7

*Beasley v. Wells Fargo Bank,*

8

   235 Cal App. 3d 1407 (1991) ............................................................................... 12

9

*Blum v. Stenson,*

10

   465 U.S. 886, 894 ................................................................................................. 9

11

*Chabner v. United of Omaha Life Ins. Co.,*

12

   No. C-95-0447-MHP, 1999 WL 33227443 (N.D. Cal. Oct. 12, 1999) ..................... 6

13

*Chaudhry v. City of L.A.,*

14

   751 F.3d 1096 (9th Cir. 2014) ............................................................................. 12

15

*Dang v. Cross,*

16

   422 F.3d 800, (9th Cir. 2005) .............................................................................. 13

17

*Farrar v. Hobby,*

18

   506 U.S. 103 (1992) ............................................................................................. 4

19

*Ferland v. Conrad Credit Corp.,*

20

   244 F.3d 1145  (9th Cir. 2001) ............................................................................ 6

21

*Hensley v. Eckerhart,*

22

   461 U.S. 424 (1983) ..................................................................................... 3, 5, 7

23

*Herrington v. County of Sonoma,*

24

   883 F.2d 739 (9th Cir.1989) ................................................................................ 3

25

*Ketchum v. Moses,*

26

   24 Cal. 4th 1122 (2001) ..................................................................................... 12

27

*Morales v. City of San Rafael,*

28

   96 F.3d 359, 363 (9th Cir. 1996) ......................................................................... 6

*Moreno v. City of Sacramento*,

   534 F.3d 1106 (9th Cir. 2008) ............................................................................ 6, 7

*Nat'l Org. for Women v. Bank of Cal., Nat'l Ass'n.*,

   680 F.2d 1291 (9th Cir. 1982) ................................................................................ 12

*Newman v. Piggie Park Enters., Inc.*,

   390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968) ............................................... 3

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,

   478 U.S. 546 (1986) .................................................................................................. 6

*Perdue v. Kenny A. ex rel. Winn*,

   559 U.S. 542 (2010) ............................................................................................. 6, 9

*Taylor v. Nabors Drilling USA, LP*,

   222 Cal. App. 4th 1228 (2014) .............................................................................. 12

*Vizcaino v. Microsoft Corp.*,

   142 F. Supp. 2d 1299 (W.D. Wash. 2001), *aff'd*, 290 F.3d 1043 (9th Cir. 2002) ..................... 5

**Statutes**

29 U.S.C. § 794a ......................................................................................................... 3

42 U.S.C. § 12205 ....................................................................................................... 3

42 U.S.C. § 1988 ……………………………………………………………………….3, 10, 13

Cal. Civ. Proc. Code § 1021.5 ............................................................................... 3, 11

Fed. R. Civ. Proc. 54 ................................................................................................ 11

1

**NOTICE OF MOTION AND MOTION**

2

TO ALL PARTIES and the COURT:

3

On February 15, 2023 at 1:00 p.m., or as soon thereafter as can be heard, before United

4

States Magistrate Judge Nathanael Cousins, in Courtroom 5, 4ᵗʰ Floor of the United States

5

District Court located at 280 South First Street, San Jose, California, Plaintiffs will and hereby

6

do move the Court for an order granting Plaintiffs' unopposed motion for attorneys' fees and

7

costs and awarding Plaintiffs the agreed-upon amount of $750,000 in fees and costs in

8

connection with the above-captioned case.

9

This motion—made pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)—is

10

based on this Notice of Motion and Motion, the accompanying Memorandum of Points and

11

Authorities, the concurrently filed declarations of William S. Freeman ("Freeman Decl."), Erin

12

Neff ("Neff Decl."), Quyen L. Ta ("Ta Decl."), and Thomas Zito ("Zito Decl.") and all

13

associated exhibits thereto, the files and records in this action,  and any oral argument this Court

14

permits.

15

**MEMORANDUM OF POINTS AND AUTHORITIES**

16

**I.    INTRODUCTION**

17

Plaintiffs respectfully seek an award of fees and costs in the agreed-upon amount of

18

$750,000.00 ("Agreed Amount"). This Agreed Amount was negotiated during a December 1,

19

2022 settlement conference with Magistrate Judge Susan van Keulen that followed more than a

20

month of arms-length negotiations between the parties—all of which occurred only after all

21

substantive settlement terms pertaining to injunctive relief for the class had been resolved. Neff

22

Decl. ¶¶ 3, 4.   Plaintiffs now respectfully request this Court enter an order approving the

23

Agreed Amount and finding that it is fair and reasonable in light of the considerable effort

24

expended by Plaintiffs and their counsel, and the excellent results achieved on behalf of the

25

class.

26

**II.    FACTUAL BACKGROUND REGARDING FEE NEGOTIATIONS**

27

The factual background, procedural history, and negotiation history concerning the

28

settlement of this litigation (except as to settlement of attorneys' fees), and the substantial

1   benefits of the settlement to the Class, are set forth in detail at pages 2-13 of Plaintiffs'

2   Unopposed Motion for Preliminary Approval. (ECF No. 114). To avoid burdening the Court, and

3   consistent with the Northern District's Procedural Guidance for Class Action Settlements,

4   Plaintiffs do not repeat that background here.

5        The Parties began negotiating attorneys' fees and costs only after all substantive issues

6   were resolved through the Parties' proposed Settlement Agreement—an Agreement that Court

7   has since preliminarily approved (See ECF No. 114). Neff Decl. ¶ 2. On October 26, 2022,

8   Plaintiffs presented their initial attorneys' fees demand to Defendant in the amount of

9   $1,372,308.82, consisting of $1,365,003.76 in fees and $7,305.06 in costs. Neff Decl. ¶ 3. In

10  calculating the fee portion of their offer, Plaintiffs' counsel started with their total incurred time

11  at their normal billing rates, and then exercised billing judgment to voluntarily reduce their hours

12  to account for any possible inefficiency or duplication of effort. Neff Decl. ¶ 3. Further, Plaintiffs

13  also waived any fees associated with the work done by Deanna Kwong, Esq. and Hewlett

14  Packard Enterprise; most fees and costs associated with non-attorney staff (such as paralegals);

15  and all costs incurred by the Law Foundation of Silicon Valley. Neff Decl. ¶ 3. Billing for

16  strategy meetings between co-counsel was reduced by limiting the hours claimed to one attorney

17  per firm, despite multiple attorneys from each firm having been involved in the meetings. Neff

18  Decl. ¶ 3. In addition, Plaintiffs only presented their fees through August 31, 2022; accordingly,

19  fees and costs associated with post-settlement procedures, such as preliminary and final

20  approval, were not included. Neff Decl. ¶ 3.

21       Parties exchanged several emails in an effort to come to an agreement on fees and costs

22  Neff Decl. ¶ 3. On December 1, 2020, the parties, through their counsel, met with Magistrate

23  Judge Susan van Keulen to mediate the issue of fees and costs. Neff Decl. ¶ 4.   The parties

24  ultimately agreed to the Agreed Amount, a total of $750,000, to settle all claims for fees and

25  costs through judgment. Neff Decl. ¶ 4. This amounts to an approximate reduction of 55% from

26  Plaintiffs' original demand, which had been based on their already-reduced lodestar amount.

27  Neff Decl. ¶ 5.

28

1

III.    **ARGUMENT**

2        In the context of a class settlement, "courts have an independent obligation to ensure

3  that" any award of fees and costs "is reasonable, even if the parties have already agreed to an

4  amount." *In re Bluetooth Headset Prod. Liab. Litig*., 654 F.3d 935, 941 (9th Cir. 2011). The

5  Court should approve the amount agreed to here.

6        A.    **Plaintiffs are the prevailing party and are entitled to their reasonable**
              **attorneys' fees and costs.**

7        It is well settled law that prevailing plaintiffs under statutes with fee shifting provisions

8  should recover their attorneys' fees unless special circumstances would render such an award

9  unjust.  *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (internal quotations and citations

10 omitted); *Barrios v. Cal. Interscholastic Fed'n*, 277 F.3d 1128, 1134 (9th Cir. 2002). Here, the

11 applicable constitutional, federal and state laws allow for fee shifting based on Plaintiffs'

12 prevailing party status.  See, 42 U.S.C. § 1988 (providing attorney's fees in proceedings for the

13 vindication of federal constitutional rights); 42 U.S.C. § 12205 (providing for attorneys' fees,

14 litigation expenses, and costs for proceedings brought under 42 U.S.C. § 12101 et seq., the

15 Americans with Disabilities Act); 29 U.S.C. § 794a(b) (providing for attorneys' fees and costs

16 for proceedings under 29 U.S.C. § 794, the Rehabilitation Act); Cal. Civ. Proc. Code § 1021.5

17 (enforcement of state laws in the public interest).

18       Such fee-shifting provisions are intended "to ensure effective access to the judicial

19 process for persons with civil rights grievances." *See Hensley*, 461 U.S. at 429 (internal

20 quotation marks omitted). As the Supreme Court has recognized, "[i]f successful plaintiffs were

21 routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to

22 advance the public interest by invoking the injunctive powers of the federal courts." *Newman v.*

23 *Piggie Park Enters., Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968) (per curiam).

24 Thus, in civil rights actions such as this one, recovery of a reasonable fee award is "the rule

25 rather than the exception." *Herrington v. County of Sonoma,* 883 F.2d 739, 743 (9th Cir.1989)

26 (order) (internal quotation marks omitted); *see also Hensley*, 461 U.S. at 429 (prevailing civil

27 rights plaintiffs "should ordinarily recover" their attorneys' fees "unless special circumstances

28

1   would render such an award unjust").

2       Ninth Circuit caselaw is clear that, "[a] plaintiff 'prevails' when he or she enters into a

3   legally enforceable settlement agreement against the defendant." *Barrios*, 277 F.3d at 1134.

4   Similarly, the Supreme Court has held that a "material alteration of the legal relationship

5   between the parties occurs" when "the plaintiff becomes entitled to enforce a judgment, consent

6   decree, **or settlement** against the defendant. *Farrar v. Hobby*, 506 U.S. 103, 113

7   (1992) (emphasis added). Under any of these three situations, "the legal relationship is altered

8   because **the plaintiff can force the defendant to do something he otherwise would not have**

9   **to do**." *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1118 (9th Cir. 2000) (emphasis added).

10       Here, Plaintiffs' status as prevailing parties is clear by virtue of their success reaching a

11   settlement which "modif[ied] the defendant's behavior in a way that directly benefits the

12   plaintiff." *Barrios v. California Interscholastic Fed'n*, 277 F.3d 1128, 1134 (9th Cir. 2002)

13   (quoting *Fischer v. SJB–P.D. Inc.*, 214 F.3d 1115, 1118 (9th Cir.2000)); *See also. Folsom v.*

14   *Butte Cty. Assn. of Gov'ts*, 32 Cal. 3d 668, 685-86 (1982) (party deemed "successful party"

15   under § 1021.5 after obtaining the relief it sought in a settlement).

16       Prior to the Parties' settlement, the City could have chosen to retain at least three miles of

17   City streets for OSV Parking or not; to issue at least one ticket before a tow, or not; and to

18   publish a map showing where people can park, or not. Pursuant to the Parties' settlement, the

19   City must do each of these things – and more – and if it fails to abide by these or any other

20   material terms of settlement, Plaintiffs and the class can initiate the dispute resolution process to

21   ensure compliance. (*See* ECF No. 114 at 11-13).

22       **B.**   **The Agreed Amount of $750,000—a significant reduction from Plaintiffs' full**
            **lodestar—is reasonable and should be approved.**

23

24       The Court should approve the Agreed Amount and find that it is reasonable because: (1)

25   the Plaintiffs have achieved an excellent result, (2) the Parties' agreed-upon fees and costs are

26   presumptively reasonable; (3) the agreed-upon fees are substantially lower than Plaintiffs'

27   lodestar; (4) the agreed upon total fees and costs are reasonable as compared to the amount of

28   work and outcome achieved by Plaintiffs; (5) the fee portion of the Agreed Amount is based on

1  reasonable attorney fee rates; and (5) the cost portion of the Agreed Amount is lower than the
2  actual out-of-pocket costs incurred by Plaintiffs.

3    **1.**  <u>Plaintiffs have achieved excellent relief for the class, and the changes they</u>
         <u>fought for will benefit all inhabitants of oversized vehicles in Mountain</u>
4         <u>View.</u>

5   The Supreme Court has held that "the degree of success obtained" by plaintiffs is the
6  "most critical factor" in determining whether they should receive "a fully compensatory fee."
7  *Hensley v. Eckerhart*, 461 U.S. 424, 435-36 (1983). In securing this settlement, Plaintiffs have
8  prevailed on their core claims and achieved an excellent result on behalf of the proposed
9  settlement class. These facts weigh heavily in favor of finding that their negotiated fee award is
10  reasonable. *See id.; Vizcaino v. Microsoft Corp.*, 142 F. Supp. 2d 1299, 1304 (W.D. Wash.
11  2001), *aff'd*, 290 F.3d 1043 (9th Cir. 2002).

12   As discussed in greater detail in Plaintiffs'' motion for preliminary approval (ECF No.
13  114) and the Courts order on preliminary approval (ECF No. 122), Plaintiffs have achieved an
14  excellent result for the class.

15   When this case was filed, Plaintiffs alleged that the challenged Ordinances would have
16  effectively banned OSV parking at any time of the day or night on over 89% of the City's streets.
17  Compl. ¶ 51. At that time there was no practical way for Plaintiffs or the class to learn what
18  streets actually were available for OSV parking, because there was no map.  Compl. ¶53.

19   At the time Plaintiffs filed this case, signs were already being erected throughout the City
20  to enable Defendant to enforce the Ordinances. Id. ¶ 52. Plaintiffs alleged they were warned that
21  enforcement would be "complaint driven," meaning that they could be penalized in response to a
22  neighbor's objection to their presence, but had no way to know when, if, or how enforcement
23  would occur. Id. ¶ 53. As a result, they lived in uncertainty and fear that they could at any
24  moment be subject to catastrophic fines, immediate tows, and the loss of their homes and
25  possessions. Id. ¶¶ 55-56. These risks and dangers were exacerbated for Plaintiffs and class
26  members with disabilities. Id. ¶¶ 60-63.

27   As discussed in greater detail in Plaintiffs' Motion for Preliminary Approval and the
28  Court's order, the settlement agreement provides significant benefits to the class by providing a

1  map showing available parking for people living in OSVs, a guaranteed three miles of streets

2  where OSV's can legally park, security of knowing that they can park their vehicles overnight in

3  those locations without being towed, tickets and warnings before vehicles are towed, processes

4  for requesting disability related accommodations, procedural protections for contesting tickets,

5  and additional protections for "pattern or practice" violations of the agreement.  (*See* ECF No.

6  114 at 17).

7          2.      Plaintiffs' full lodestar is the presumptively-reasonable fee, and the
                   Parties' agreed-upon award represents a significant reduction from this
8                  amount.

9          Plaintiffs' full lodestar, calculated by multiplying the number of hours Plaintiffs

10  reasonably expended on the litigation by their reasonable hourly rate, is the presumptively

11  reasonable attorneys' fee. See *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010);

12  *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996), *amended by* 108 F.3d 981 (9th

13  Cir. 1997); *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564

14  (1986).  This amount, $1,365,003.76 in fees and $7,305.06 in costs as of August 31, 2022 is far

15  more than the agreed-upon $750,000 fee and cost award in this case, thus reinforcing the

16  reasonableness of the negotiated smaller request to be awarded in this case.

17          As the Ninth Circuit has recognized, lawyers have little incentive to "spend unnecessary

18  time" on civil rights cases taken on contingency, and in considering such cases, "the court should

19  [generally] defer to the winning lawyer's professional judgment as to how much time [they were]

20  required to spend." *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). In

21  determining what was reasonable, courts are also mindful that there are "crucial differences

22  between prosecuting and defending a case." *Chabner v. United of Omaha Life Ins. Co.*, No. C-

23  95-0447-MHP, 1999 WL 33227443, *3 (N.D. Cal. Oct. 12, 1999); *see also Ferland v. Conrad

24  Credit Corp.*, 244 F.3d 1145, 1151 (9th Cir. 2001) (per curiam) (detailing differences).

25          Plaintiffs have devoted more than 2,100 hours to this action through September 15, 2022.

26  Neff Decl., Exh. A; Freeman Decl., Exh. A; Ta Decl., Exh. A; Zito Decl. Exh. B.  That time was

27  spent engaging in advocacy aimed at preventing the need for litigation; conducting legal and

28  factual research including propounding California Public Records Act Requests and reviewing

all responses; interviewing and responding to Plaintiffs and members of the putative class; drafting the complaint; engaging in motion practice; drafting discovery requests; conducting extensive settlement negotiations with the City over a period of nine months; and doing other necessary work that led directly to the excellent relief achieved.  Neff Decl. ¶¶ 12-18; Freeman Decl., Exh. A; Ta Decl. ¶¶ 16-21; Zito Decl. ¶¶ 30-36.

In the interest of settlement, Plaintiffs wrote off a significant amount of this time, representing approximately 45% reduction of their lodestar through August, 2022.[1]  The Agreed Amount of $750,000 thus represents a significant reduction to Plaintiffs' lodestar and the "fully compensatory fee" they are entitled to, *Hensley*, 461 U.S. at 435-36, which Plaintiffs were willing to agree to in the interest of bringing this case to a close. Neff Decl. ¶ 5.  This represents a much deeper cut than any court would likely order, in the context of a contested motion for fees. *See Moreno*, 534 F.3d at 1112-13 (holding that cuts in excess of 10% must be accompanied by an explanation of exactly which time expenditures were excessive, and why). This negotiated $750,000 amount—which is also intended to compensate Plaintiffs for their full costs—is thus more than reasonable.

        3.    <u>The standard hourly rates for Plaintiffs' counsel are in line with those charged by other Northern District lawyers of similar skill, experience, and reputation, supporting the reasonableness of the Parties' agreed award.</u>

Plaintiffs' lodestar is based on the following 2022 rates:

**American Civil Liberties Union Foundation of Northern California**

| Attorney | 2019 rate | 2020 rate | 2021 rate | 2022 rate | Graduation year |
|---|---|---|---|---|---|
| William Freeman | $ 915.00 | $ 940.00 | $ 955.00 | $ 990.00 | 1978 |
| Grayce Zelphin | N/A | N/A | $ 530.00 | $ 690.00 | 2011 |
| Jamie Crook | $ 585.00 | N/A | N/A | N/A | 2006 |
| Brandon Greene | N/A | $ 380.00 | $ 445.00 | N/A | 2013 |

---

[1]    It is worth noting that this was largely possible because the one private-sector organization among Plaintiffs' counsel, the law firm of King & Spalding, will not receive any proceeds from this award, as it is donating the entire portion of any award of fees attributable to its efforts to the non-profit organizations so that they may continue their work. Ta Decl. ¶ 24.

1

2

3

**Disability Rights Advocates**

| Attorney | Rate | Graduation Year |
|---|---|---|
| Thomas Zito | $ 590.00 | 2010 |
| Sean Betouliere | $ 490.00 | 2015 |
| Shira Tevah | $ 490.00 | 2015 |
| Monica Porter | $ 460.00 | 2016 |
| Michelle Iorio | $ 520.00 | 2013 |
| Paralegal/Law Clerk | $ 280.00 | N/A |

**Law Foundation of Silicon Valley**

| Attorney | Rate | Graduation Year |
|---|---|---|
| Annette Kirkham | $ 803.00 | 2001 |
| Nadia Aziz | $ 681.00 | 2007 |
| Erin Neff | $ 453.00 | 2014 |
| Lauren Carden | $ 529.00 | 2011 |
| Michael Trujillo | $ 388.00 | 2019 |

**King & Spalding**

| Attorney | Position | Graduation Year | 2020 Rate/Hour | 2021 Rate/Hour | 2022 Rate/Hour |
|---|---|---|---|---|---|
| Quyen Ta | Partner | 2003 | $990.00 | $1070.00 | N/A |
| Arwen Johnson | Partner | 2006 | $930.00 | $1015.00 | $1125.00 |
| Kelly Perigoe | Partner | 2009 | $880.00 | $960.00 | $1125.00 |
| Sam Diamant | Senior Associate | 2012 | $810.00 | $909.43 | $1024.61 |
| Meghan Strong | Associate | 2018 | $565.00 | $645.00 | $775.00 |
| Rachel Rubens | Associate | 2020 | N/A | $550.00 | $639.70 |

Freeman Decl. ¶ 6; Zito Decl. ¶ 21; Neff Decl. ¶ 25; Ta Decl. ¶ 13.

Plaintiffs' Counsel's 2022 billing rates are reasonable, as they are based on the experience of each lawyer, as compared to attorneys of similar experience. Neff Decl. ¶ 3; Ta Decl. ¶ 14. Freeman Decl. ¶ 5; Zito Decl. ¶¶ 23-24. The reasonableness of market rates is determined by reference to the rates of "lawyers of reasonably comparable skill, experience, and reputation" in the relevant community. *Davis v. City & Cty. of San Francisco*, 976 F.2d 1536,

1545-46 (9th Cir. 1992), opinion vacated in part on unrelated grounds on denial of reh'g, 984 F.2d 345 (9th Cir. 1993); see also *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010). In making this comparison, courts must look not only to the rates charged by or awarded to other civil rights attorneys and non-profit organizations, but also to the rates that **private** attorneys of comparable skill charge or are awarded. *Davis*, 976 F.2d at 1545-46. This is because "Congress did not intend the calculation of fee awards to vary depending on whether plaintiff was represented by private counsel or by a nonprofit legal services organization." *Blum v. Stenson,* 465 U.S. 886, 894 (1984).

Similarly, rates in a civil rights matter such as this should not be reduced based on a false premise that civil rights litigation is simpler or less worthy of compensation than other forms of complex legal work. As the Supreme Court held in City of Riverside v. Rivera: "Congress made clear that it intended that the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases and not be reduced because the rights involved may be nonpecuniary in nature." 477 U.S. 561, 575 (1986) (quotation marks omitted) (italics in original).

The billing rates of ACLU-NC and King & Spalding are based on the rate for each year the work was completed, while DRA and Law Foundation billing rates are all based on the current year, as shown in the charts above. Freeman Decl. ¶ 6; Zito Decl. ¶ 21; Neff Decl. ¶ 25; Ta Decl. ¶ 13. Seeking rates at the current year is reasonable because counsel must assume the cost of litigation and compensation is delayed. See *Perdue v. Kennedy A.* 559 U.S. 542, 56 (2010) (quoting *Missouri v. Jenkins*, 491 U.S. 274, 282 (1989) (stating that delayed compensation is "either based on the award on the current rates or by adjusting the fee based on historical rates to reflect its present value.") ACLU-NC and King & Spalding are entitled to fees billed at rates for 2022 but provided a further discount by billing at the rate for each previous year. Additionally, King and Spalding's rates represent their "discounted client" rates and thus represent a discount from their standard rates. Ta Decl. ¶ 13.

Plaintiff's attorneys in this case are experienced in civil rights and class action cases, as well as the needs and rights of unhoused people. Freeman Decl. ¶¶ 15-22; Zito Decl. ¶¶ 10-20;

1   Neff Decl. ¶¶ 18-24; Ta Decl. ¶¶ 6-11. Each attorney has a rate that reflects their experience and

2   background. Their rates reflect the prevailing rates in the community for similarly complex

3   work, and their standard rates have been repeatedly approved by courts in this District and

4   elsewhere in California. See Neff Decl. ¶ 26; Freeman Decl.¶ 17; Zito Decl. ¶ 22.

5        Plaintiffs' counsel have had their standard hourly rates regularly approved in the

6   Northern District of California, including by this Court. See Neff Decl. ¶ 26; Freeman Decl.¶ 17;

7   Zito Decl. ¶ 22. This is true, in large part, because Plaintiffs' counsel and their organizations are

8   highly skilled and experienced in complex, class action, and civil rights litigation. See Freeman

9   Decl. ¶¶ 15-22; Zito Decl. ¶¶ 10-20; Neff Decl. ¶¶ 18-24; Ta Decl. ¶¶ 6-11.

10       Plaintiff's counsel Disability Rights Advocates (DRA) has successfully litigated

11   hundreds of disability rights class action and impact cases across the country. *See* Zito Decl. at

12   ¶¶ 6-20 (describing firm and its attorneys).  In recognition of this skill and experience, courts in

13   California have routinely approved DRA's standard rates as reasonable, and awarded hourly

14   rates to DRA attorneys – including Mr. Zito and Mr. Betouliere – that are commensurate to those

15   awarded to or charged by attorneys at other top-tier firms.[2]

16       The standard hourly rates of William Freeman and others at the American Civil Liberties

17

18   _____

    [2]      *See*, *e.g.*, *Roque v. Seattle Housing Authority*, No. 2:20-cv-658-JRC, Order on Motion for
19   Attorneys' Fees and Costs (Dkt. No. 92) (W.D. Wash, Sept. 28, 2021) (approving 2021 rates of
    $545 for Mr. Zito—the "senior litigator"—and $445 per hour for Mr. Betouliere in the Seattle
20   market); *T.G. v. Kern County*, No. 1:18-CV-00257-JLT Order Granting Final Approval of the
    Class Action Settlements and Order Granting Plaintiffs' Motion For Fees and Costs (Dkt. No.
21   73) (E.D. Cal. June 5, 2020) (approving settlement of attorneys' fees including 2020 rates of
    $525 per hour for Mr. Zito); *Cmty. Res. For Indep. Living v. Mobility Works of Cal.*, No. 18-CV-
22   06012-JSW, 2020 WL 10505223, *2 (N.D. Cal., May 22, 2020) (awarding 2020 rates, including
    $525 for Thomas Zito, $425 for Sean Betouliere, $275 for paralegals, and $230 for litigation
23   assistants); *Cole v. Cty. of Santa Clara*, No. 16-CV-06594-LHK, Dkt. No. 86 (N.D. Cal. Mar. 21,
    2019) (awarding 2018 rates, including $525 for an attorney with eight years of experience, and
24   $425 for an attorney with five years of experience); *see also Nat'l Fed'n of the Blind v. Uber
    Techs., Inc.*, 3:14-cv-04086 NC, Dkt. Nos. 139, 144, 193 (N.D. Cal.) (approving DRA's 2016
25   rates); *G.F. v. Contra Costa Cty.*, No. 3:13-cv-03667-MEJ, Dkt. No. 307 (N.D. Cal. Nov. 25,
    2015) (approving settlement fees based on 2014 rates); *Gray v. Golden Gate Nat'l Recreation
26   Area*, No. 3:14-cv-00511, Dkt. No. 26 (N.D. Cal. July 10, 2014) (finding requested rates
    reasonable to support negotiated lodestar); *Californians for Disability Rights v. Cal. Dep't of
27   Transp.*, No. C 06-5125 SBA, Dkt. Nos. 528, 529 (N.D. Cal.) (finding 2010 rates reasonable);
    *Nat'l Fed'n of the Blind v.Target Corp.*, No. C 06-01802 MHP, 2009 WL 2390261 (N.D. Cal.
28   Aug. 3, 2009) (finding 2008 rates reasonable).

1  Union Foundation of Northern California are also regularly approved by courts in this district

2  and elsewhere.[3]  The standard hourly rates of Law Foundation of Silicon Valley attorneys have

3  similarly been approved by courts in this district. *See Huynh v. Harasz*, No. 14-cv-02367-LHK,

4  Amended Order Granting Attorneys' Fees (Dkt. No. 166) (N.D. Cal., March 17, 2017).

5          The requested King and Spalding rates, which are regularly billed to paying clients, are

6  "5 to 15 percent below the 2021 AmLaw 50, top 75th percentile average standard rates for

7  litigation." Ta Decl. at ¶ 14.

8          Finally, Richard M. Pearl, an experienced attorney with substantial expertise in attorney's

9  fees issues, also reviewed the rates of Plaintiffs' counsel.[4] See Pearl Decl. ¶¶ 3-8. According to

10  Mr. Pearl, the hourly rates of Plaintiffs' counsel are reasonable and in line with rates charged by

11  similarly qualified attorneys in the legal community for comparable services. See Pearl Decl. ¶¶

12  20, 31, 35. To come to this conclusion, Mr. Pearl familiarized himself with the proceedings, as

13  well as the experience and qualifications of Plaintiffs' counsel. Pearl Decl. ¶¶ 17-18. His opinion

14  is also based on his extensive and long experience on attorney's fees, as well as recent judicial

15  rate determinations and the reported rates of several local law firms. See Pearl Decl. ¶¶ 21-27.

16  Mr. Pearl also based his opinion on data gathered from declaration, surveys, articles, and

17  individual correspondence, including the LSI Laffey Matrix and the 2018 Peer Monitor Public

18  Rates, all of which indicate that Plaintiff's rates are reasonable and in line with the local legal

19  market rate Pearl Decl. ¶¶ 26-34. The fee portion of the Agreed Amount is reflective of the

20  reasonable rates of each attorney and thus should be approved by the Court.

21

22

---

23  [3] *See, e.g., Saravia, et al. v. Sessions, et al.*, No. 17-cv-03615-VC, U.S.D.C., N.D. Cal., Dkt. No.
   264 (June 7, 2021) (approving negotiated fee award based on unchallenged rates including 2019
24  rate of $945 for William Freeman); *Sanchez, et al, v. California Department of Transportation,
   et. al.*, Case No. RG16842117, California Superior Court, Alameda County (July 14, 2020)
25  (judgment approving negotiated fee award based on unchallenged rates including $940 for Mr.
   Freeman); *Zepeda Rivas, et al. v. Jennings*, Case No. 20-cv-02731-VC, U.S.D.C., N.D. Cal.,
26  Dkt. No. 1257 (June 9, 2022) (approving negotiated fee award based on unchallenged rates
   including 2021 rate of $1,030 for Mr. Freeman).

27  [4] Since 1982, Mr. Pearl has focused his career on general civil litigation and appellate practice
   with a focus on appeals involving court-awarded attorney's fees. Over 98% of his practice is
28  devoted to court-awarded attorney's fees and he has been used as an expert in over 250 cases
   related to attorney's fees.

---

1

        4.    <u>While the Parties' negotiated fee award does not reflect a lodestar multiplier, one would have been appropriate in this case.</u>

2

3

     Plaintiffs are normally entitled to a multiplier for the contingent risk of the case and

4

enforcing important constitutional rights. *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001).

5

Where a case involves important constitutional rights with no damages, a multiplier is

6

appropriate to make the case economically feasible to private attorneys. *Id*. at 1133 (quoting

7

*Weeks v. Baker & McKenzie*, 63 Cal. App. 4th 1128, 1172 (1998). Because Plaintiffs prevailed

8

on claims under California as well as federal law, they are also eligible for a multiplier in

9

accordance with California standards. *See Chaudhry v. City of L.A.*, 751 F.3d 1096, 1112 (9th

10

Cir. 2014) ("when a plaintiff succeeds on both federal and state claims that support a fee award,

11

the state law multiplier is available."). Courts applying California law typically award a

12

multiplier where one or more factors are met. *See, e.g.*, *Taylor v. Nabors Drilling USA, LP*, 222

13

Cal. App. 4th 1228, 1251-52 (2014) (affirming multiplier of 1.4 or 1.5 based on contingent risk

14

and preclusion of other employment opportunities alone).

15

     Here while Plaintiffs would be normally be entitled to seek a multiplier because of the

16

contingent risks of the case, as Plaintiffs' counsel are not charging fees and rather, have borne the

17

entire costs and risk associated with litigating this case for two years, they are not doing so. Zito

18

Decl. ¶ 46. This further reinforces the reasonableness of the Parties Agreed Amount, as it

19

effectively represents a *negative multiplier* in a case for which Plaintiffs' counsel would be

20

entitled to seek an enhanced fee.

21

        5.    <u>Plaintiffs are entitled to recover their reasonable litigation costs.</u>

22

     Plaintiffs also expended substantial costs in litigating this case and should be

23

compensated. "Costs are awarded to the prevailing party in civil actions as a matter of course

24

absent express statutory provision, 'unless the court otherwise directs.'" *Nat'l Org. for Women v.*

25

*Bank of Cal., Nat'l Ass'n.*, 680 F.2d 1291, 1294 (9th Cir. 1982) (quoting Fed. R. Civ. P. 54(d)).

26

Plaintiffs are entitled to their taxable costs under Fed. R. Civ. Proc. 54(d), California Code of

27

Civil Procedure §§ 1021.5. *See Beasley v. Wells Fargo Bank*, 235 Cal App. 3d 1407, 1421

28

(1991). Additionally, nontaxable costs and out-of-pocket expenses are recoverable under 42

1    U.S.C. § 1988. *See Dang v. Cross*, 422 F.3d 800, 814 (9th Cir. 2005).

2            Plaintiffs' counsel incurred over $7,000 in costs in this action. See Zito Decl. ¶ 42; Ta

3    Decl. ¶ 21. As with the fees, Plaintiffs have also discounted their costs, particularly the costs

4    associated with the work of the Law Foundation. Neff Decl. ¶ 3; The total costs are included in

5    the Agreed Amount.

6    **IV.    CONCLUSION**

7            For the foregoing reasons, Plaintiffs request that the Court grant this unopposed motion,

8    and award Plaintiffs their attorneys' fees and costs in the total amount of $750,000.

9

10   Dated: December 16, 2022

11

12   */s/ Erin Neff*                                    */s/ William S. Freeman*
     Erin Neff                                          William S. Freeman
     Karen Kontz                                        Grayce Zelphin
13   LAW FOUNDATION OF SILICON                          Brandon Greene
     VALLEY                                             AMERICAN CIVIL LIBERTIES UNION
14                                                      FOUNDATION OF NORTHERN
                                                        CALIFORNIA
15
     */s/ Thomas Zito*                                  */s/ Deanna L. Kwong*
16   Thomas Zito                                        Deanna L. Kwong
     Sean Betouliere                                    HEWLETT PACKARD ENTERPRISE
17   DISABILITY RIGHTS ADVOCATES

18   */s/ Quyen L. Ta*                                  *Attorneys for Plaintiffs*
19   Quyen L. Ta
     Arwen R. Johnson
20   Kelly Perigoe
     Samuel R. Diamant
21   Rachel Rubens
     KING & SPALDING LLP
22

23

24

25

26

27

28