1   ERIN NEFF (SBN 326579)
    erin.neff@lawfoundation.org
2   KAREN E. KONTZ (SBN 300918)
    karen.kontz@lawfoundation.org
3   LAW FOUNDATION OF SILICON
    VALLEY
4   4 North Second Street, Suite 1300
    San Jose, CA 95113
5   Telephone:  (408) 280-2410
    Facsimile:   (408) 293-0106
6
    THOMAS ZITO (SBN 304629)
7   tzito@dralegal.org
    SEAN BETOULIERE (SBN 308645)
8   sbetouliere@dralegal.org
    DISABILITY RIGHTS ADVOCATES
9   2001 Center Street, 4th Floor
    Berkeley, California 94704-1204
10  Telephone: (510) 665-8644
    Facsimile: (510) 665-8511
11
    DEANNA L. KWONG (SBN 233480)
12  deanna.l.kwong@hpe.com
    HEWLETT PACKARD ENTERPRISE
13  6280 America Center Drive
    San Jose, CA 95002
14  Telephone: (650) 258-3307
    *Pro Bono Counsel*
15
    *Attorneys for Plaintiffs*

    WILLIAM S. FREEMAN (SBN 82002)
    wfreeman@aclunc.org
    GRAYCE ZELPHIN (SBN 279112)
    gzelphin@aclunc.org
    BRANDON GREENE (SBN 293783)
    bgreene@aclunc.org
    AMERICAN CIVIL LIBERTIES UNION
    FOUNDATION OF NORTHERN
    CALIFORNIA
    39 Drumm Street
    San Francisco, CA 94111
    Telephone: (415) 621-2493
    Facsimile: (415) 255-8437

    QUYEN L. TA (SBN 229956)
    qta@kslaw.com
    ARWEN R. JOHNSON (SBN 247583)
    ajohnson@kslaw.com
    KELLY PERIGOE (SBN 268872)
    kperigoe@kslaw.com
    SAMUEL R. DIAMANT (SBN 288738)
    sdiamant@kslaw.com
    RACHEL RUBENS (SBN 333886)
    rrubens@kslaw.com
    KING & SPALDING LLP
    50 California Street, Suite 3300
    San Francisco, CA 94111
    Telephone:  (415) 318-1227

16

17                    **UNITED STATES DISTRICT COURT**

18                    **NORTHERN DISTRICT OF CALIFORNIA**

19                          **SAN JOSE DIVISION**

20   CELERINA NAVARRO, JANET STEVENS,        Case No. 5:21-cv-05381-NC
     ARMANDO COVARRUBIAS, EVELYN
21   ESTRADA, GABRIEL RANGEL JAIME,          **PLAINTIFFS' NOTICE OF UNOPPOSED**
     ALMA ALDACO, and all others similarly   **MOTION FOR FINAL APPROVAL OF**
22   situated,                               **CLASS ACTION SETTLEMENT;**
                                             **MEMORANDUM OF POINTS AND**
23              Plaintiffs,                  **AUTHORITIES**

24        v.                                 Date:      February 15, 2023
                                             Time:      1:00 p.m.
25   THE CITY OF MOUNTAIN VIEW,              Place:     Remote (Zoom)
                                             Judge:     Hon. Nathanael Cousins
26              Defendant.

27

28

**TABLE OF CONTENTS**

I.     INTRODUCTION ............................................................................................... 1

II.    BACKGROUND ................................................................................................ 2

       A.    Procedural History ................................................................................. 2

       B.    History of Merits Settlement Negotiations ............................................. 4

       C.    Material Terms of the Proposed Settlement............................................ 5

             1.    OSV Parking Capacity ................................................................ 6

             2.    Composite Parking Regulation Map ........................................... 6

             3.    Enforcement and Dispute Resolution ......................................... 6

             4.    Reasonable Accommodation Requests Based on Disability ...... 7

             5.    Attorneys' Fees .......................................................................... 7

             6.    Class Release .............................................................................. 7

III.   LEGAL STANDARD ........................................................................................ 8

IV.    ARGUMENT ..................................................................................................... 9

       A.    The Parties Provided Notice Pursuant to the Agreement and the
             Court-Approved Notice Plan ................................................................ 9

       B.    The Court Should Confirm Its Initial Finding that the Proposed
             Settlement Class Meets the Requirements of Federal Rule of Civil
             Procedure 23(a).................................................................................... 10

             1.    The Settlement Class is Sufficiently Numerous. ...................... 10

             2.    The Settlement Class Satisfies Commonality. .......................... 11

             3.    The Named Plaintiffs' Claims are Typical. .............................. 12

             4.    Named Plaintiffs and Class Counsel are Adequate
                   Representatives. ....................................................................... 13

       C.    The Court Should Confirm Its Initial Finding that Plaintiffs Have
             Satisfied the Requirements of Rule 23(b)(2). ....................................... 15

       D.    The Settlement is Fair, Reasonable, and Adequate and Should be
             Approved by the Court......................................................................... 16

             1.    Plaintiffs and Their Counsel Have Adequately Represented
                   The Class............................................................................... 16

             2.    The Proposed Settlement Was Negotiated at Arm's Length. ................. 17

             3.    The Relief Provided for the Class is Adequate......................... 18

i

a.    Adequacy of Relief ........................................................ 18

b.    Costs, Risks, and Delay of Trial and Appeal ................................ 20

c.    Effectiveness of Proposed Method of Distributing Relief ..................................................................... 21

d.    Proposed Attorneys' Fees .............................................. 21

e.    The Class Release is only for claims that were or could have been asserted in this case, and that are based on an  identical factual predicate; class member claims for damages are expressly excluded. ................... 21

4.    The Proposal Treats Class Members Equitably. ....................................... 22

E.    The Court Should Enter the Proposed Form of Judgment. .................................. 22

V.    CONCLUSION ............................................................................ 23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:21-cv-05381-NC

1

## TABLE OF AUTHORITIES

2
**Page(s)**

3

**Cases**

4

*Abdullah v. U.S. Sec. Assocs., Inc.*,
5            731 F.3d 952 (9th Cir. 2013) ..................................................................................11

6

*Am. Council of the Blind v. Astrue*,
            No. C05-04696 WHA, 2008 WL 4279674 (N.D. Cal. Sept. 11, 2008)...................14
7

*Amchem Prods., Inc. v. Windsor*,
8            521 U.S. 591 (1997)..............................................................................................15

9

*In re Aqua Metals, Inc. Sec. Litig.*,
10            No. 17-cv-07142-HSG, 2022 WL 612804 (N.D. Cal. Mar. 2, 2022)......................18

11

*Baby Neal for & by Kanter v. Casey*,
            43 F.3d 48 (3d Cir. 1994) .......................................................................................15
12

*Bakhtiar v. Info. Res., Inc.*,
13            2021 WL 4472606 (N.D. Cal. Feb. 10, 2021) .........................................................8

14

*In re Bluetooth Headset Prod. Liab. Litig.*,
15            654 F.3d 935 (9th Cir. 2011) .................................................................................21

16

*Californians for Disability Rights, Inc. v. California Dep't of Transp.*,
            249 F.R.D. 334 (N.D. Cal. 2008)...........................................................................13
17

*Cancilla v. Ecolab, Inc.*,
18            No. 12-cv-03001-JD, 2016 WL 54113 (N.D. Cal. Jan. 5, 2016)..............................8

19

*Class Plaintiffs v. City of Seattle*,
20            955 F.2d 1268 (9th Cir. 1992) ................................................................................8

21

*In re Extreme Networks, Inc. Sec. Litig.*,
            No. 15-CV-04883-BLF, 2019 WL 3290770 (N.D. Cal. July 22, 2019)...........16, 17
22

*Garner v. State Farm Mut. Auto Ins. Co.*,
23            No. CV 08 1365 CW (EMC), 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010)........18

24

*Gen. Tel. Co. of the Sw. v. Falcon*,
25            457 U.S. 147 (1982)..............................................................................................13

26

*Gray v. Golden Gate Nat'l Recreational Area*,
            279 F.R.D. 501 (N.D. Cal. 2011)......................................................................12, 15
27

*Hanlon v. Chrysler Corp.*,
28            150 F.3d 1011 (9th Cir. 1998) ....................................................................... *passim*

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ............................................................12

*Hesse v. Sprint Corp.*,
    598 F.3d 581 (9th Cir. 2010) ...........................................................22

*Just Film, Inc. v. Buono*,
    847 F.3d 1108 (9th Cir. 2017) ....................................................12, 13

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) ........................................................9, 16

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ...........................................................11

*In re MyFord Touch Consumer Litig.*,
    No. 13-CV-03072-EMC, 2019 WL 1411510 (N.D. Cal. Mar. 28, 2019) ...............16

*O'Connor v. Uber Techs., Inc.*,
    No. 13-CV-03826-EMC, 2019 WL 1437101 (N.D. Cal. Mar. 29, 2019) ...............16

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*,
    688 F.2d 615 (9th Cir. 1982) ..........................................................8, 9

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014) ......................................................12, 15

*Rannis v. Recchia*,
    380 Fed. Appx. 646 (9th Cir. 2010)...................................................10

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) .............................................................9

*Roes, 1-2 v. SFBSC Mgmt., LLC*,
    944 F.3d 1035 (9th Cir. 2019) .........................................................17

*Rosado v. Ebay Inc.*,
    No. 5:12-cv-04005-EJD, 2016 WL 3401987 (N.D. Cal. June 21, 2016) ................8

*Sueoka v. United States*,
    101 F. App'x 649 (9th Cir. 2004) .....................................................10

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ...............................................17

*Tinsley v. Snyder*,
    922 F.3d 957 (9th Cir. 2019) ...........................................................12

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)...................................................................11, 12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Statutes**

28 U.S.C. § 1715 ............................................................................................................... 10

**Court Rules**

Fed. R. Civ. P. 23(a) ...................................................................................... *passim*

Fed. R. Civ. P. 23(b) ...................................................................................... *passim*

Fed. R. Civ. P. 23(c) ............................................................................................. 9

Fed. R. Civ. P. 23(e) ...................................................................................... *passim*

Fed. R. Civ. P. 23(h) ............................................................................... 2, 7, 21

UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:21-cv-05381-NC

1

**NOTICE OF MOTION AND MOTION**

2        TO ALL PARTIES and the COURT: PLEASE TAKE NOTICE THAT on February 15,

3    2023 at 1:00 p.m., or as soon thereafter as can be heard, Plaintiffs Celerina Navarro, Janet

4    Stevens, Armando Covarrubias, Evelyn Estrada, and Alma Aldaco (collectively "Plaintiffs" or

5    "Named Plaintiffs"), will move the Court for entry of an order granting final approval of the

6    settlement negotiated with Defendant City of Mountain View ("Defendant" or "City") and

7    preliminarily approved by the Court by order entered November 2, 2022. *See* ECF No. 122

8    (Order Granting Preliminary Approval of Class Action Settlement). The hearing on this motion

9    will take place before United States Magistrate Judge Nathanael Cousins, and will be conducted

10    via Zoom webinar (the login information for which can be found on the Court's website at

11    https://www.cand.uscourts.gov/judges/cousins-nathanael-nc/).

12        Plaintiffs move the Court to (1) certify the settlement class; (2) grant final approval of

13    their proposed class-wide settlement agreement, submitted as Ex. 1 to the Declaration of Karen

14    Kontz ("Kontz Declaration"); and (3) enter judgment pursuant to the settlement agreement.

15        This motion is based upon this Notice of Motion and Motion, the accompanying

16    Memorandum of Points and Authorities, the concurrently filed declarations and exhibits, the

17    motion for preliminary approval and the previously-filed declarations and exhibits in support

18    thereof (ECF No. 114), all pleadings and papers on file in this action, and any oral argument that

19    may be presented. The City has indicated through its counsel that the City does not oppose this

20    motion.

21

**MEMORANDUM OF POINTS AND AUTHORITIES**

22    **I.        INTRODUCTION**

23        In 2021, Plaintiffs filed this action against the City of Mountain View, alleging that two

24    recently-enacted ordinances restricting when and where oversized vehicles ("OSVs") could park

25    violated the state and federal constitutional and statutory rights of Plaintiffs and other people

26    living in OSVs. Following extensive negotiations that took place over more than nine months,

27    the Parties have reached a Settlement Agreement (the "Agreement") that—among other things—

28    will ensure OSV residents have at least three miles of parking available to them in the City, and

**1**

UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:21-cv-05381-NC

1   will receive notice prior to towing of their vehicular homes.  The Agreement is in the best

2   interest of all Parties and satisfies the requirements of Federal Rule of Civil Procedure 23.

3   Plaintiffs respectfully request that the Court: (1) grant final approval of the Agreement and (2)

4   enter judgment pursuant to the Agreement.[1]

5   **II.    BACKGROUND**

6          This section largely restates the Background section of Plaintiffs' Motion for Preliminary

7   Approval (ECF No. 114).[2]  Consistent with the Northern District's Procedural Guidance for

8   Class Action Settlements, Plaintiffs again present here a summary of this case's history and

9   background for purposes of completeness and ease of reference.

10         On October 22, 2019, the Mountain View City Council passed Ordinance No. 14.19 to,

11  among other things, restrict the parking of OSVs on streets adjacent to Class II bikeways (the

12  "Bike Lane Ordinance"), and Ordinance No. 15.19 to, among other things, restrict the parking of

13  OSVs on streets that are 40 feet wide or less (the "Narrow Streets Ordinance") (collectively, the

14  "Ordinances").

15         **A.    Procedural History**

16         On July 14, 2021, Plaintiffs filed a class action complaint for declaratory and injunctive

17  relief on behalf of "all persons who currently reside, seek to reside, or who have resided in an

18  oversized vehicle within Mountain View between December 18, 2020 (the date that the Narrow

19  Streets Ordinance was passed) and the present" ("Proposed Class").  ECF No. 1 ("Compl.")

20  ¶ 17.[3]  The complaint asserted claims arising under the U.S. and California constitutions and

21  federal and state statutes.  *Id.* ¶¶ 65-133.  On August 17, 2021, the City filed a motion to dismiss

22

_____

23  [1]     Nothing in this unopposed motion should be construed as an admission of liability, or a
    waiver of any arguments or defenses any party might raise in the future, should final approval
24  not be granted.

25  [2]     The settlement of Plaintiffs' claim for attorneys' fees and costs is separately presented in
    Plaintiffs' Unopposed Motion for Approval of Attorneys' Fees and Costs pursuant to Fed. R.
26  Civ. P. 23(h) (ECF No. 128) and all documents filed in support thereof.

27  [3]     The complaint also proposed a "disability subclass" consisting of all Class members who
    have a disability as defined under the Americans with Disabilities Act.  Compl. ¶ 26.  Plaintiffs
28  do not seek certification of a disability subclass here, however, because the proposed class
    settlement provides the same relief to all class members, including class members with
    disabilities.

1    the complaint, asserting that Plaintiffs failed to state a claim for relief as to each of the claims

2    pleaded.  ECF No. 26.  On August 30, 2021, Plaintiffs filed a motion for preliminary injunction,

3    ECF No. 33, seeking an order prohibiting the City from enforcing the Ordinances.  The City filed

4    its opposition to the motion on September 21, 2021.  ECF No. 41.

5          On September 7, 2021, in lieu of Plaintiffs filing a motion for provisional class

6    certification, the Parties filed a stipulation agreeing that in the event the Court issued injunctive

7    relief such relief would extend to all members of the Proposed Class, and preserving the right of

8    Plaintiffs to move for class certification at a later date and the right of the City to object to such a

9    motion.  ECF No. 37.  The Court approved this stipulation on October 8, 2021.  ECF No. 53.

10    The Parties also stipulated to a protective order, which was entered by the Court on September

11    29, 2021.  ECF No. 46.

12          On September 17, 2021, Plaintiffs served the City with discovery in the form of

13    interrogatories, requests for production of documents, and requests for admissions.  On

14    September 29, 2021, the Parties agreed to extend the deadlines for the City to respond to this

15    discovery.  ECF No. 47.

16          The Court heard argument on the motions to dismiss the complaint and for preliminary

17    injunction on October 20, 2021, ECF No. 55, and entered its order on both motions on November

18    9, 2021, ECF No. 64.  In its order, the Court denied the motion for a preliminary injunction,

19    denied the City's motion to dismiss on certain of Plaintiffs' claims, and granted the City's

20    motion to dismiss other claims with leave to amend.  *Id.*

21          Settlement negotiations began in earnest almost immediately after issuance of this order,

22    and to facilitate a focus on these discussions, the Parties agreed to a continuance of the deadlines

23    for Defendant's responses to Plaintiffs' discovery.  ECF No. 65.  The Parties also agreed, with

24    the approval of the Court, to extend the time for Plaintiffs to amend the complaint.  ECF No. 67.

25    Subsequently, the Parties agreed, and the Court approved in part or in whole, a series of

26    stipulations to stay the litigation, including discovery, while settlement negotiations continued.

27    ECF No. 72 (Jan. 6, 2022); ECF No. 83 (Apr. 4, 2022); ECF No. 98 (June 27, 2022).  While the

28    Parties initiated settlement discussions on their own, further discussions were mediated by

1  Magistrate Judge Susan van Keulen.  ECF Nos. 68, 74-80, 82, 89-90, 92-96; *see also* II.B *infra*.

2  During this entire time, in order to permit settlement discussions to proceed, Plaintiffs insisted,

3  and the City agreed, that the City would not issue any citations or tow any OSVs for violations of

4  the Ordinances.  *Id*.

5        On August 24, 2022, counsel for the Parties informed the Court that a tentative settlement

6  had been reached, subject to approval by their clients and the Court.  ECF No. 99.  On August

7  30, 2022, September 11, 2022, and September 23, 2022, the parties further updated the Court on

8  the status of the tentative settlement.  ECF Nos. 102, 104, 106.  On September 28, 2022,

9  Plaintiffs filed their motion for leave to withdraw as counsel for one of the Named Plaintiffs, due

10  to their inability to communicate with him concerning the settlement.  ECF No. 110.  On October

11  21, 2022, Plaintiffs filed their unopposed motion for preliminary approval of class action

12  settlement.  ECF No. 114.

13        On November 2, 2022, the Court held a hearing on Plaintiff's on Plaintiffs' motion for

14  preliminary approval of class action settlement and motion for leave to withdraw.  The Court

15  granted both motions through orders entered on November 2, 2022 after the hearing. ECF Nos.

16  120, 122.

17      **B.**    **History of Merits Settlement Negotiations**[4]

18        On August 24, 2021, the parties stipulated to an ADR process consisting of an early

19  settlement conference with a Magistrate Judge following determination of the City's motion to

20  dismiss.  (Plaintiff's motion for preliminary injunction had not yet been filed.)  ECF No. 30.  On

21  August 31, 2021, the Court set the hearings on Plaintiffs' motion for preliminary injunction and

22  the City's motion to dismiss for October 20, 2021, and referred the case to Magistrate Judge van

23  Keulen for a settlement conference to be scheduled at her discretion.  ECF No. 35.  On

24  September 1, 2021, the Court ordered the parties to contact Judge van Keulen to schedule a

25  settlement conference following its rulings on the motions.  ECF No. 36.

26

27    ———————————————
4      Plaintiffs present the Parties' fees and costs settlement agreement—which, at the

28  insistence of Plaintiffs' counsel, the Parties did not negotiate until after resolving the substantive issues—in Plaintiffs' motion for attorneys' fees and costs (ECF No. 128).

1    On November 11, 2021, counsel for Defendant reached out to counsel for Plaintiffs to

2    commence private settlement negotiations.  ECF No. 114-1, Declaration of Erin Neff ("Neff

3    Decl.") ¶ 13.  An initial negotiation session was held by telephone on November 17, 2021.  *Id.*

4    On the basis of this initial discussion, the Parties agreed to extend deadlines for amending the

5    complaint and responding to discovery.  *Id.*  On December 1, 2021, Plaintiffs' counsel sent a

6    letter to Defendant's counsel setting forth a comprehensive settlement proposal.  *Id.*  Defendant

7    sent a written response on January 31, 2022.  *Id.*  Additional written proposals were subsequently

8    exchanged.  *Id.*

9    For the entirety of settlement negotiations, Plaintiffs' counsel made clear that they would

10    not negotiate with Defendant concerning any request for attorney's fees until the Parties had

11    reached agreement on substantive relief for Plaintiffs and the proposed Class.  *Id.* ¶ 14.

12    Counsel for the parties met on numerous occasions via phone and videoconference from

13    December 2021 through August 2022.  *Id.* ¶ 15.  Beginning on March 9, 2022, counsel

14    participated, both jointly and separately, in approximately 10 settlement conferences and

15    informal discussions with Magistrate Judge van Keulen.  *Id.*; ECF Nos. 79, 80, 82, 92, 93, 95,

16    96.  During this time, counsel also continued to engage in direct communications with each other

17    and exchanged additional written proposals.  Neff Decl. ¶ 15.  These discussions were

18    occasionally contentious as each side strongly advocated their respective clients' interests, but

19    each side also made concessions that permitted the discussions to progress.  *Id*.  The discussions

20    culminated in the tentative settlement reached on August 24, 2022.  *Id*.  The Court granted

21    preliminary approval of the settlement by order dated November 2, 2022.  ECF No. 122.

22    **C.    Material Terms of the Proposed Settlement**

23    The Agreement, which is attached as Exhibit 1 to the Kontz Declaration ("Ex. 1"),

24    defines a single class of "all persons who resided or sought to reside in an oversized vehicle

25    within the City of Mountain View at any time beginning from December 18, 2020, through the

26    conclusion of the Effective Period of this Agreement" (the "Settlement Class").  The key terms

27    of the agreement are set out below.

28    The "Effective Period" for the Agreement begins on the date of entry of Judgment and

1    ends four years after that date.  Ex. 1 at 2.

2                        1.    OSV Parking Capacity

3            During the Effective Period, the City shall ensure no less than three miles of street

4    segments are available for OSV parking.  Ex. 1 at § 2.  Each included street segment shall have

5    parking capacity for OSVs on both sides of the street.  *Id.*  A street segment has available parking

6    capacity for OSVs as long as the following restrictions and/or prohibitions do not apply to that

7    street segment: (1) the Narrow Streets Ordinance; (2) the Bike Lane Ordinance; (3) any

8    prohibition on parking from 2 a.m. to 6 a.m.; (4) any temporal restriction on parking for a period

9    of time less than 72 hours, including any metered parking; and (5) any prohibition on all parking.

10   *Id*.

11                       2.    Composite Parking Regulation Map

12           The Agreement creates and attaches a Composite Parking Regulation Map that shows

13   where OSV residents may lawfully park.  Ex. 1§ 1(A).  The Map is to be distributed in a full-

14   color version at all times, and the City must update the Map within 15 business days of any

15   material change affecting the Map and prior to enforcing any such change.  *Id*. at § 1(A), (B).

16   Distribution of the Map began on September 1, 2022.  *Id.* at § 1(C).  Mountain View police

17   officers must continue to distribute the Map, including providing a copy any time an officer

18   requests an OSV resident relocate or issues a parking citation, and officers may commence

19   issuing citations on October 1, 2022.  *Id.* The Map shall be available in English, Spanish,

20   Russian, and Chinese.  *Id.* The map must also be available on the City of Mountain View

21   website, as well as posted at city hall and the public library.  *Id*.

22                       3.    Enforcement and Dispute Resolution

23           Section 3(A) of the Agreement sets out the minimum amount of pre-towing notice the

24   City must give OSV residents.  An OSV may be immediately towed without other notice if the

25   OSV is parked in the path of traffic, is blocking a driveway, or when the OSV is occupied by a

26   repeat offender who has received no fewer than three parking citations under the Ordinances,

27   with at least 72 hours between citations.  *Id.* at § 3(A)(i).  In all other circumstances, OSVs may

28   only be towed for violating the Ordinances 72 hours after at least one parking citation has been

1    issued, provided the citation was accompanied by a flyer (*see* Ex. C to Ex. 1) and a copy of the

2    Map. *Id.* at § 3(A)(ii).  The Agreement states that these are minimum requirements, and provides

3    that enforcement officers will have discretion to provide additional time or notification before

4    enforcement, if the officer determines that there is good cause to do so. *Id.* at § 3(A)(iii).

5    Enforcement will be conducted, to the greatest extent practicable, by the Mountain View Police

6    Department's Youth and Community Services Unit. *Id.* at § 3(A).

7        The Agreement provides a dispute resolution process for an individual Class Member to

8    contest an individual citation or tow of their OSV. *Id.* at § 3(B).  It also contains a more

9    comprehensive dispute resolution process for disputes about the interpretation or implementation

10   of the Agreement, including any disputes concerning a "pattern or practice" alleged to be in

11   violation of the enforcement procedures set forth in § 3. *Id.* at § 12.  This section requires the

12   Parties to endeavor to resolve disputes "as swiftly and inexpensively as possible," and to meet

13   and confer prior to seeking the assistance of the Court for resolution of any dispute. *Id.* at § 12.

14              4.    Reasonable Accommodation Requests Based on Disability

15       The Agreement provides that requests for reasonable accommodation will be made and

16   considered on a case-by-case basis. *Id.* at § 5(B).  Requests may be made during interactions

17   with police officers, by calling the number listed on a courtesy notification, or by filling out the

18   City of Mountain View ADA Grievance Form. *Id.*

19              5.    Attorneys' Fees

20       Consistent with the insistence by Plaintiffs' counsel that fees not be discussed prior to

21   reaching agreement on all substantive terms, the Agreement provides that, following execution

22   of the Agreement, the Parties will attempt to negotiate Plaintiffs' claim for attorneys' fees and

23   costs, which the City contests. *Id.* at § 4.  The Parties have since reached an agreement for the

24   payment by the City to Plaintiffs' counsel in the amount of $750,000 to cover all claims for fees

25   and costs through judgment, which is being separately presented to the Court for approval at the

26   time of the hearing on this motion, pursuant to Federal Rule of Civil Procedure 23(h).

27              6.    Class Release

28       In exchange for the substantial injunctive relief that the Agreement guarantees, class

1 members will only release claims "that were [. . .] or could have been asserted in this case

2 relating to the Ordinances, and based on the identical factual predicate as those alleged." Ex. 1 at

3 § 11(D). Class member claims for damages are expressly excluded from this release. *Id.* at §

4 11(I).

5 **III.    LEGAL STANDARD**

6          Settlement is "the preferred means of dispute resolution[,] . . . especially . . . in complex

7 class action litigation." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d

8 615, 625 (9th Cir. 1982). Indeed, a "strong judicial policy" favors the settlement of class actions.

9 *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Under Rule 23(e) of the

10 Federal Rules of Civil Procedure, a class action settlement that is binding on absent class

11 members requires court approval. *See Officers for Just.*, 688 F.2d at 623. This court approval is

12 a two-step process: (1) preliminary approval of the settlement, and (2) after a notice period, final

13 determination that the settlement is fair, reasonable, and adequate. *See Bakhtiar v. Info. Res.,*

14 *Inc.*, 2021 WL 4472606, at *5-6 (N.D. Cal. Feb. 10, 2021).

15          At final approval, the Court first "determines that notice to the class members was

16 accomplished in the manner prescribed by the settlement and as approved by the Court at the

17 preliminary approval stage." *Cancilla v. Ecolab, Inc.*, No. 12-cv-03001-JD, 2016 WL 54113, at

18 *3 (N.D. Cal. Jan. 5, 2016). The Court then analyzes whether it should confirm final

19 certification of any class preliminarily certified for settlement. *Rosado v. Ebay Inc.*, No. 5:12-

20 cv-04005-EJD, 2016 WL 3401987, at *1-2 (N.D. Cal. June 21, 2016).

21          Finally, "[h]aving already completed a preliminary examination of the agreement, the

22 court reviews it again, mindful that the law favors the compromise and settlement of class action

23 suits." *Id.* (citing *Churchill Village. LLC v. Gen. Elec.*, 361 F.3d 566,576 (9th Cir. 2004)). The

24 Court should "reach a reasoned judgment that the agreement is not the product of fraud or

25 overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a

26 whole, is fair, reasonable and adequate to all concerned." *Officers for Just.*, 688 F.2d at 625.

27 Ultimately, "the decision to approve or reject a settlement is committed to the sound discretion of the

28 trial judge because he is exposed to the litigants and their strategies, positions, and proof." *Hanlon v.*

1    *Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998); *see also Officers for Just.*, 688 F.2d at 625;

2    *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009).

3    **IV.    ARGUMENT**

       **A.    The Parties Provided Notice Pursuant to the Agreement and the Court-**
4              **Approved Notice Plan**

5           Notice to a settlement class certified under Rule 23(b)(2) is within the Court's discretion.

6    Fed. R. Civ. P. 23(c)(2)(a), (e)(1).  Notice provided under Rule 23(e) must "generally describe[ ]

7    the terms of the settlement in sufficient detail to alert those with adverse viewpoints to

8    investigate and to come forward and be heard." *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th

9    Cir. 2012) (alteration in original) (quoting *Rodriguez*, 563 F.3d at 962).  The Parties' approved

10   notice plan meets this standard.

11          The Parties provided notice to the Settlement Class following preliminary approval in a

12   manner that effectively informed the class about the settlement and their right to object.  The

13   content of the notice explained the basis of this lawsuit, summarized the terms of the Agreement,

14   and informed Class Members of their rights, including their right to object to the settlement.  *See*

15   ECF No. 114-1 at pp. 76-80 (Proposed Notice Form).  Notice was distributed as follows:

16          First, the Mountain View Police Department personally distributed the class notice to all

17   known occupied OSVs parked in the City in November 2022 through the means described in the

18   Declaration of Janleah McPherson ("McPherson Decl.") submitted herewith.  *See* McPherson

19   Decl., ¶¶ 2-6; Declaration of Margaret Prinzing ("Prinzing Decl."), ¶ 6.

20          Second, the City caused notice to be published in periodicals of general circulation in the

21   City and surrounding communities, the City's website, at the Mountain View Public Library, and

22   at the Mountain View City Hall through the means described in the Declaration of Merry

23   Monlux ("Monlux Decl.") submitted herewith.  *See* Monlux Decl., ¶¶ 2-5; Prinzing Decl. ¶ 6.

24          Third, Plaintiffs provided information concerning the Settlement to local non-profit

25   organizations that provides services to unhoused individuals and individuals living in OSVs in

26   the City and surrounding communities.  *See* Kontz Decl., ¶ 6.

27          As of the filing of this Motion, Plaintiffs have not received any objection from any

28

**9**

1    member of the Settlement Class in response to the notice described above.[5]  *Id.*, ¶ 8.

2          In addition to providing notice to members of the proposed class, the City provided

3    notice of the Parties' proposed Agreement to appropriate federal and state officials, as required

4    under 28 U.S.C. § 1715 as described in the Declaration of Margaret Prinzing ("Prinzing Decl.")

5    submitted herewith.  Prinzing Decl., ¶ 4.[6]

6          **B.    The Court Should Confirm Its Initial Finding that the Proposed Settlement
             Class Meets the Requirements of Federal Rule of Civil Procedure 23(a).**

7

8          The Court previously determined that each of Rule 23(a)'s four requirements for class

9    certification is satisfied for purposes of the proposed Agreement and Settlement Class.  *See* ECF

10   No. 122 (Order Granting Preliminary Approval of Class Action Settlement).  The Settlement

11   Class is properly certified at this time consistent with the Court's prior analysis.

12               1.    The Settlement Class is Sufficiently Numerous.

13         The first element of Rule 23(a) requires that the class be "so numerous that joinder of all

14   members is impracticable."  Fed. R. Civ. P. 23(a)(1).  The numerosity requirement is "not tied to

15   any fixed numerical threshold"—courts generally find that classes with 40 or more members

16   satisfy it, but even much smaller classes can suffice.  *See Rannis v. Recchia*, 380 Fed. Appx. 646,

17   651 (9th Cir. 2010) (discussing standard, and affirming certification of 20-member class).  And

18   where, as here, plaintiffs seek only injunctive and declaratory relief, "the numerosity requirement

19   is relaxed and plaintiffs may rely on the reasonable inference arising from plaintiffs' other

20   evidence that the number of unknown and future members of [the] proposed [class] . . . is

21   sufficient to make joinder impracticable."  *Sueoka v. United States*, 101 F. App'x 649, 653 (9th

22   Cir. 2004).  Surveys conducted by the City of Mountain View found that the total inhabited

23

24   ─────────────
     [5]     Prior to the filing of Plaintiffs' motion for preliminary approval, one individual submitted
25   a letter to the Court claiming that the City was enforcing 72 hour parking restrictions to target
     individuals living in RVs, and apparently objecting to any settlement that did not address such
26   conduct.  *See* ECF No. 113 (Letter from J. Powers).  Plaintiffs note that any claims related to
     enforcement of 72 hour parking restrictions are is not covered by the this Action and are not
27   within the scope of the Agreement.  Plaintiffs will respond to any objections by the February 1,
     2023 deadline set forth in the Court's order granting preliminary approval (ECF No. 122).

28   [6]     Aside from the notice provisions of 28 U.S.C. § 1715(b) and the requirement that such
     notice be given at least 90 days before this Court grants final approval, 28 U.S.C. § 1715(d), the
     substantive provisions of CAFA do not apply to this injunctive relief settlement.

─────────────

**10**

UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:21-cv-05381-NC

1    vehicles parked on the City's streets ranges between 250-300, with the most recent survey stating

2    that in July of 2020 there were 265 vehicles in which people were living, with 191 of those

3    classified as RVs.[7]  Neff Decl., ¶ 25 & Ex. 3 at 2-3.  This far exceeds the threshold for class

4    certification, and the Court should therefore find that the Settlement Class is sufficiently

5    numerous.

6                    2.    The Settlement Class Satisfies Commonality.

7            The second element of Rule 23(a) requires the existence of "questions of law or fact

8    common to the class."  Fed. R. Civ. P. 23(a)(2).  Commonality is satisfied where the plaintiff

9    alleges the existence of "common contentions" such that "determination of [their] truth or falsity

10   will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-*

11   *Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  This does not "mean that *every* question

12   of law or fact must be common to the class."  *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952,

13   957 (9th Cir. 2013) (emphasis in original) (citations omitted).  "[F]or purposes of Rule 23(a)(2),

14   even a single common question" can establish commonality.[8]  *Wal-Mart*, 564 U.S. at 359

15   (citation and internal quotation marks omitted); *see also Mazza v. Am. Honda Motor Co.*, 666

16   F.3d 581, 589 (9th Cir. 2012).

17           Here, Plaintiffs challenged City-wide ordinances and related enforcement policies and

18   practices that apply to every member of the proposed class.[9]  Compl. ¶¶ 16-19.  The legality of

19

20   [7]       A somewhat more recent count conducted by volunteers found that there were 206
     inhabited OSVs parked on City streets in August 2021.  *See* https://www.mv-
21   voice.com/news/2021/12/13/new-survey-finds-hundreds-of-inhabited-rvs-parked-on-mountain-
     views-city-streets#.YzSYFS7BTgI.link.

22   [8]       Rule 23(a)(2)'s commonality requirement is "less rigorous" than the predominance
     requirement of Rule 23(b)(3).  *Hanlon*, 150 F.3d at 1019; *see also Wal-Mart*, 564 U.S. at 359
23   (distinguishing requirements).

24   [9]       This case raised numerous common questions of law and fact, including: (1) whether the
     Ordinances prevented Class Members from residing in or traveling to the City of Mountain
25   View; (2) whether the Ordinances were justified by a compelling government interest; (3)
     whether the Ordinances were narrowly tailored to serve any such compelling government
26   interest; (4) whether Named Plaintiffs and other Class Members had any practically available
     alternative to sheltering in their OSVs in Mountain View; (5) whether the Ordinances violated
27   one or more constitutional or statutory provisions; (6) whether Named Plaintiffs and other Class
     Members were at risk that their OSVs, along with their personal belongings, will be impounded
28   by the City without sufficient notice; and (7) whether Named Plaintiffs and other Class Members

1    the Ordinances and associated policies and practices is a question "capable of classwide

2    resolution," *See Wal-Mart*, 564 U.S. at 350, and where a lawsuit seeks a determination regarding

3    "systemic policies and practices" that affect all of the putative class members—as this case did—

4    Rule 23(a)'s commonality requirement is met.  *See Parsons*, 754 F.3d at 681 (discussing cases);

5    *see also B.K. by her next friend Tinsley v. Snyder*, 922 F.3d 957, 969 (9th Cir. 2019) (finding

6    commonality despite possible differences among class members, and holding that challenge to

7    systemic "policies and practices [was] the 'glue' that h[eld] together the putative class"); *Gray v.*

8    *Golden Gate Nat'l Recreational Area*, 279 F.R.D. 501, 512 (N.D. Cal. 2011) (finding

9    commonality satisfied where plaintiffs challenged "uniform policies and practices of failing to

10   ensure" accessibility for people with disabilities).  Moreover, the relief achieved through the

11   Parties' Agreement will redound to every member of the settlement class.  *See* § II(C) above.

12          The Court should thus find that the proposed Settlement Class satisfies Rule 23(a)'s

13   commonality requirement.

14                  3.     The Named Plaintiffs' Claims are Typical.

15          The third element of Rule 23(a) requires that the claims of the representative parties are

16   typical of each class member. Fed. R. Civ. P. 23(a)(3).  "Under [Rule 23(a)(3)'s] permissive

17   standards, representative claims are 'typical' if they are reasonably coextensive with those of

18   absent class members; they need not be substantially identical."  *Parsons v. Ryan*, 754 F.3d 657,

19   685 (9th Cir. 2014) (quoting *Hanlon*, 150 F.3d at 1020).  "The requirement of typicality is not

20   primarily concerned with whether each person in a proposed class suffers the same type of

21   damages; rather, it is sufficient for typicality if the plaintiff endured a course of conduct directed

22   against the class." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017); *see also Hanon*

23   *v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) ("Typicality refers to the nature of the

24   claim or defense of the class representative, and not to the specific facts from which it arose or

25   the relief sought") (citation omitted).  Because typicality overlaps with commonality, a finding of

26

27   _____

28   were entitled to equitable relief, including system-wide policy changes, to address the alleged
     constitutional and statutory violations associated with the Ordinances and their enforcement.
     Compl. ¶ 19.

1  commonality usually supports a finding of typicality.  *See Gen. Tel. Co. of the Sw. v. Falcon*, 457

2  U.S. 147, 157 n.13 (1982) (commonality and typicality requirements frequently "merge").

3      Here, Named Plaintiffs and every member of the proposed settlement class suffered

4  alleged injuries attributable to the same alleged "course of conduct": the City's enactment of the

5  Ordinances, and its planned policies and practices relating to enforcement of the same.  *See*

6  Compl. ¶¶ 16-19; *see also Just Film*, 847 F.3d at 1117-18 (plaintiff's claims were typical

7  because her injuries "stem[med] from the same scheme" and she could prove "nature" of the

8  violation "for the benefit of all class members").  The legal theories that Named Plaintiffs would

9  have relied on to redress this harm apply equally to each member of the proposed Settlement

10  Class, and the relief Plaintiffs have achieved will benefit that class as a whole.  *See supra* § II(C);

11  *see also* Compl. at ¶¶ 19-24.

12          4.    Named Plaintiffs and Class Counsel are Adequate Representatives.

13      The final element of Rule 23(a) requires that the "representative parties will fairly and

14  adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  To satisfy this element,

15  the named plaintiffs and their counsel must not have any conflicts of interest with the other class

16  members, and the named plaintiffs and their counsel must pursue the action vigorously on the

17  class's behalf.  *Hanlon*, 150 F.3d at 1020.  Class counsel may demonstrate their qualifications

18  with previous experience litigating class action lawsuits.  *See id.* at 1021.  And adequate

19  representation of counsel is generally presumed in the absence of contrary evidence.

20  *Californians for Disability Rights, Inc. v. California Dep't of Transp.*, 249 F.R.D. 334, 349 (N.D.

21  Cal. 2008).

22      As set forth by the Named Plaintiffs' declarations previously submitted in connection

23  with preliminary approval, there are no conflicts between the Named Plaintiffs and other Class

24  Members.  *See* ECF No. 114-5, Declaration of Celerina Navarro ("Navarro Decl.") ¶ 6; ECF No.

25  114-6, Declaration of Janet Stevens ("Stevens Decl.") ¶ 7; ECF No. 114-8, Declaration of

26  Armando Covarrubias ("Covarrubias Decl.") ¶ 6; ECF No. 114-6, Declaration of Evelyn Estrada

27  ("Estrada Decl.") ¶ 6; ECF No. 114-9, Declaration of Alma Aldaco ("Aldaco Decl.") ¶ 6.

28  Plaintiffs are directly affected by the Ordinances and related policies and practices that they

1    challenge in this case, and the Parties' Agreement provides the same injunctive relief for them

2    and every member of the proposed class. *See* § II(C), above; *see* Compl. at ¶¶ 19-24; Navarro

3    Decl. ¶ 8; Stevens Decl. ¶ 9; Covarrubias Decl. ¶ 8; Estrada Decl. ¶ 8; Aldaco Decl. ¶ 8.; *see also*

4    *Am. Council of the Blind v. Astrue*, No. C05-04696 WHA, 2008 WL 4279674, at *6 (N.D. Cal.

5    Sept. 11, 2008) (holding that where Plaintiffs do not seek monetary damages, "[t]he potential for

6    any conflict or collusion is . . . minimal").

7            In addition, Named Plaintiffs have vigorously represented the class and pursued this

8    outcome on behalf of the Settlement Class: they have knowledge of the case and their duties as

9    class representatives, have stayed reasonably informed about the case, have participated in

10   settlement negotiations, and have reviewed and support the Agreement.  Navarro Decl. ¶¶ 4-7;

11   Stevens Decl. ¶¶ 5-8; Covarrubias Decl. ¶¶ 4-7; Estrada Decl. ¶¶ 4-7; Aldaco Decl. ¶¶ 4-7.

12           As set forth by the declarations previously submitted in connection with preliminary

13   approval, Class counsel have extensive experience litigating class action suits, including other

14   similar civil rights class actions and class actions challenging government policies.  ECF No.

15   114-1, Neff Decl. ¶¶ 2-12; ECF No. 114-2, Declaration of Thomas Zito ("Zito Decl.") ¶¶ 3-12;

16   ECF No. 114-3, Declaration of William Freeman ("Freeman Decl.") ¶¶ 3-7; ECF No. 114-4,

17   Declaration of Quyen Ta ("Ta Decl.") ¶¶ 3-7.  Class counsel also have expertise in government

18   policies impacting unhoused populations and the legal rights of unhoused people.  *Id.*  Class

19   counsel thoroughly investigated the claims and spent over a year vigorously litigating this action,

20   including moving for injunctive relief, propounding extensive discovery, and engaging in months

21   of negotiation.  Zito Decl. ¶¶ 13-19.  Prior to filing the instant litigation, Class counsel advocated

22   zealously on behalf of the class to persuade the City not to adopt the OSV ordinance.  *Id.*  In

23   addition, Class counsel properly refused to negotiate a demand for payment of attorney's fees

24   and costs until after reaching a tentative settlement with the City on all other aspects of the

25   litigation, in order to avoid even the appearance of any conflict between the interests of counsel

26   and the interests of the Class.  Neff Decl. ¶ 14.

27           Based on Class counsel's experience litigating novel and complex cases against public

28   entities (including cases involving the rights of unhoused people), the injunctive terms and other

1   provisions contained in the Parties' Agreement will adequately protect the constitutional and

2   statutory rights of Plaintiffs and other class members that this case sought to vindicate.  Neff

3   Decl. ¶ 24; Zito Decl. ¶ 29; Freeman Decl. ¶ 9; Ta Decl. ¶ 12.  Moreover, Class Counsel are

4   well-aware that attempting to reach a resolution through additional litigation could have taken

5   years and, due to the novel nature of the claims, might not have yielded a resolution as favorable

6   as that contained in the proposed Agreement.  Neff Decl. ¶¶ 21-24; Zito Decl. ¶¶ 26-29; Freeman

7   Decl. ¶ 9; Ta Decl. ¶ 12.  The Court should confirm its prior finding that Rule 23(a)(4)'s

8   adequacy requirement is met.

9          C.      **The Court Should Confirm Its Initial Finding that Plaintiffs Have Satisfied**
               **the Requirements of Rule 23(b)(2).**
10

11          Rule 23(b)(2), which requires that the defendant "has acted or refused to act on grounds

12   that apply generally to the class, so that final injunctive relief or corresponding declaratory relief

13   is appropriate respecting the class as a whole," was designed to facilitate civil rights class actions

14   such as this one.  *See* Fed. R. Civ. P. 23(b)(2).  "Civil rights cases against parties charged with

15   unlawful, class-based discrimination are prime examples" of the purpose of this rule.  *Amchem*

16   *Prods.*, *Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *see also Parsons*, 754 F.3d at 686 (The

17   primary role of this rule "has always been the certification of civil rights class actions."); *Baby*

18   *Neal for & by Kanter v. Casey*, 43 F.3d 48, 64 (3d Cir. 1994) ("The writers of Rule 23 intended

19   that subsection (b)(2) foster institutional reform by facilitating suits that challenge widespread

20   rights violations of people who are individually unable to vindicate their own rights.").  The rule

21   is "almost automatically satisfied in actions primarily seeking injunctive relief."  *Gray v. Golden*

22   *Gate Nat'l Recreational Area*, 279 F.R.D. 501, 520 (N.D. Cal. 2011) (quoting *Baby Neal*, 43

23   F.3d at 58).

24          Certifying the proposed settlement class under Rule 23(b)(2) is appropriate because under

25   the Agreement, all Plaintiffs and all members of the proposed Class will benefit from the

26   guaranteed three miles of OSV parking capacity, clear map of where OSV parking is possible,

27   modified enforcement practices, and other certainties that the Agreement provides.  *See* Ex. 2.

28   Certification is also appropriate because the Agreement provides only injunctive relief to the

1    class and does not release class member claims for damages.

2         **D.    The Settlement is Fair, Reasonable, and Adequate and Should be Approved by the Court.**

3
4         In making a final fairness determination on a class settlement, Rule 23 requires courts to

5    consider: (1) whether the class was adequately represented; (2) whether the proposed settlement

6    was negotiated at arm's length; (3) whether the relief provided for the class is adequate, taking

7    into account the costs, risks, and delay of trial and appeal, the terms of any proposed award of

8    attorneys' fees, and other facts; and (4) whether the proposal treats class members equitably

9    relative to one another.  Fed. R. Civ. P. 23(e)(2); *see also Lane*, 696 F.3d at 819.  Following

10   amendments in 2018, Rule 23(e) now "clarifies that preliminary approval should only be granted

11   where the parties have 'shown that the court *will likely be able to* . . . approve the proposal under

12   [the final approval factors] in Rule 23(e)(2).  Review at the preliminary approval stage is thus

13   increasingly robust." *In re MyFord Touch Consumer Litig.*, No. 13-CV-03072-EMC, 2019 WL

14   1411510, at *4 (N.D. Cal. Mar. 28, 2019) (emphasis original).[10]

15            1.    Plaintiffs and Their Counsel Have Adequately Represented The Class.

16        In determining whether a class has been adequately represented, courts consider the same

17   "adequacy of representation" questions that are relevant to class certification.  *See MyFord*

18   *Touch*, 2019 WL 1411510 at *8; *O'Connor v. Uber Techs., Inc.*, No. 13-CV-03826-EMC, 2019

19   WL 1437101, at *6 (N.D. Cal. Mar. 29, 2019).  As discussed above, in § IV(B)(4), this

20   requirement is satisfied in a number of ways.  First, class counsel engaged in extensive

21   investigation and advocacy prior to filing suit.  Zito Decl. ¶¶ 13-19.  Second, counsel and the

22   Class vigorously prosecuted the action through a preliminary injunction motion, defending

23   against a motion to dismiss, and propounding discovery.  *See* ECF Nos. 26, 33, 41, 43, 49, 50,

24

25   _____

     [10]    These new Rule 23(e)(2) factors are not intended to "'displace' any factors currently
26   used" by Ninth Circuit courts, "but instead aim to focus the court and attorneys on 'the core
     concerns of procedure and substance that should guide the decision whether to approve the
27   proposal.'"  *In re Extreme Networks, Inc. Sec. Litig.*, No. 15-CV-04883-BLF, 2019 WL
     3290770, at *6 (N.D. Cal. July 22, 2019) (discussing and quoting Advisory Committee's note to
28   2018 amendment).  The amended rule "therefore directs the parties to present the settlement to
     the court in terms of a shorter list" of factors that "should always matter" when making this
     decision.  Advisory Committee Notes to 2018 Amendments, Fed. R. Civ. P. 23(e)(2).

1   63, 67.  Lastly, Named Plaintiffs have stayed engaged and involved and represented the interests

2   of the class, including by providing information and input throughout the Parties' settlement

3   negotiations.  Navarro Decl. ¶¶ 4-7; Stevens Decl. ¶¶ 5-8; Covarrubias Decl. ¶¶ 4-7; Estrada

4   Decl. ¶¶ 4-7; Aldaco Decl. ¶¶ 4-7.

5               2.    The Proposed Settlement Was Negotiated at Arm's Length.

6          The proposed settlement was reached after more than nine months of arm's-length

7   negotiations, including exchanges of written proposals, numerous in-person conferences among

8   counsel, and numerous settlement conferences under the supervision of Magistrate Judge van

9   Keulen.  While no presumption of fairness attaches to settlements achieved through arms-length

10  negotiations, *see Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019), such

11  negotiations do weigh in favor of approval.[11]  Fed. R. Civ. P. 23(e)(2)(B).  And, as the Advisory

12  Committee has recognized, "the involvement of a neutral or court-affiliated mediator or

13  facilitator . . . may bear on whether [negotiations] were conducted in a manner that would protect

14  and further the class interests."  Advisory Committee Notes to 2018 Amendments, Fed. R. Civ.

15  P. 23(e)(2).  Where, as here, an agreement is the product of "serious, informed, non-collusive

16  negotiations" conducted by experienced counsel over an "extended period of time," courts

17  routinely find that preliminary approval is appropriate.  *See, e.g., In re Tableware Antitrust*

18  *Litig*., 484 F. Supp. 2d 1078, 1079-80 (N.D. Cal. 2007).

19         Furthermore, Class counsel refused to negotiate attorneys' fees and costs until after the

20  settlement was completed and approved by Plaintiffs.  Neff Decl. ¶ 14.  Another indicia of

21  appropriateness of the arm's-length negotiations are the lack of pre-settlement "clear sailing"

22  agreements or other pre-settlement negotiations concerning fees.  *See, e.g.*, *In re Extreme*

23  *Networks*, 2019 WL 3290770, at *7 (scrutinizing pre-class certification settlement signs of

24  collusion including when and how attorney's fees are negotiated).

25

26
    ---
    [11]      The considerations encompassed by new Rule 23(e)(b)(2) overlap with those
27  contemplated by "certain *Hanlon* factors, such as the non-collusive nature of negotiations, the
    extent of discovery completed, and the stage of proceedings."  *In re Extreme Networks, Inc. Sec.*
28  *Litig*., No. 15-CV-04883-BLF, 2019 WL 3290770, at *7 (N.D. Cal. July 22, 2019) (citing
    *Hanlon*, 150 F.3d at 1026).

**17**

UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:21-cv-05381-NC

1          3.    The Relief Provided for the Class is Adequate.

2          The third factor requires courts to consider whether "the relief provided for the class is

3    adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the

4    effectiveness of any proposed method of distributing relief to the class, including the method of

5    processing class-member claims; (iii) the terms of any proposed award of attorney's fees,

6    including timing of payments; and (iv) any agreement required to be identified under Rule

7    23(e)(3)."  Fed. R. Civ. P. 23(e)(2)(C).

8               *a.    Adequacy of Relief*

9          In their complaint, Plaintiffs alleged—and believed they could prove[12]—that enforcement

10   of the Ordinances when this case was filed would have effectively banned OSV parking at any

11   time of the day or night on over 89% of the City's streets, not to mention the unavailability of

12   24-hour parking on most other streets, due to other ordinances, restrictions, and obstacles.

13   Compl. ¶ 51.  Moreover, even if OSV parking were available on some streets, Plaintiffs alleged

14   they had no ready means to learn what those streets were, as the City refused to publish a map

15   showing where legal OSV parking was possible.  *Id.* ¶ 53.

16         At the time Plaintiffs filed this case, signs were already being erected throughout the City

17   to enable Defendant to enforce the Ordinances.  *Id.* ¶ 52.  Plaintiffs alleged they had been warned

18   that enforcement would be "complaint driven," meaning that they could be penalized in response

19   to a neighbor's objection to their presence, but had no way to know when, if, or how

20   enforcement would occur.  *Id.* ¶ 53.  As a result, they lived in uncertainty and fear that they could

21

22   _____

23   [12]       Plaintiffs acknowledge that Defendant disputes many of these allegations. The fact that
     these allegations and any defenses were contested and remained to be proven at trial presented
24   both parties with significant costs and litigation risks, which militated in favor of a negotiated
     settlement. *See, e.g., In re Aqua Metals, Inc. Sec. Litig.*, No. 17-cv-07142-HSG, 2022 WL
25   612804, at *6 (N.D. Cal. Mar. 2, 2022) (Approval of a class settlement found to be appropriate
     where plaintiffs "must overcome significant barriers to make their case" and "defendants would
26   'strenuously' dispute whether class certification is appropriate and also contest each element of
     the causes of action…."; *Garner v. State Farm Mut. Auto Ins. Co.*, No. CV 08 1365 CW (EMC),
     2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (where defendant raised "significant
27   challenges to Plaintiffs' claims," court held that "it is the very uncertainty of outcome in
     litigation and avoidance of wasteful and expensive litigation that induce consensual
28   settlements.")) (citation omitted).

1   at any moment be subject to catastrophic fines, immediate tows, and the loss of their homes and

2   possessions. *Id.* ¶¶ 55-56. These risks and dangers were exacerbated for Plaintiffs and class

3   members with disabilities. *Id.* ¶¶ 60-63. Plaintiffs alleged the City had no identifiable process

4   for accommodating the needs of persons with disabilities in enforcing the Ordinances. *Id.* ¶ 64.

5       During the Effective Period, the Agreement will provide significant, life-altering benefits

6   for members of the Class, which will remove the daily uncertainty and insecurity about where

7   they can park their vehicles, relieve them from the fear of crushing fines and immediate towing,

8   and help them to live in their home city as productive members of the community. The City's

9   agreement to keep 3 miles of streets available for OSV parking free from the restrictions

10  imposed by the Ordinances, Ex. 2 § 2, gives Class members the security of knowing they can

11  park their vehicles overnight without fear of being ticketed or towed. The City's agreement, for

12  the first time, to publish, distribute, and update a map that clearly identifies the location of these

13  available streets, *id.* § 1(A)-(C), means that Class members are not forced into a scavenger hunt

14  to locate them. Under the Agreement, except for immediate risks to traffic safety, Class

15  members cannot be towed for violating the Ordinances without receiving 72-hour advance notice

16  and a copy of the map, *id.* § 3(A), giving them an opportunity to move to one of the available

17  streets. The Agreement also guarantees a specific process for people with disabilities to request

18  a reasonable accommodation, *id.* § 5(B), and states that police officers have discretion to provide

19  additional time or notice before towing an OSV, *id.* § 3(A)(iii). The City's agreement to a

20  dispute resolution process for both individual complaints, *id.* § 3(B) and any allegations of

21  "pattern or practice" violations of the Agreement, *id.* § 12, provide additional, substantial

22  procedural protections.[13]

23

---

24  [13]     Pursuant to this District's Procedural Guidance for Class Action Settlements, Plaintiffs'
    counsel refer the Court to the one comparable recent settlement of which they are aware. *Geary*
25  *v. City of Pacifica,* No. 3:21-cv-1780-VC (N.D. Cal.) was a putative class action brought by
    OSV residents against the City of Pacifica, which had enacted an ordinance prohibiting the
26  parking of OSVs on "narrow streets" and other streets deemed "unsafe for traffic." The case was
    settled on a non-class basis with the Court entering a stipulated injunction, ECF No. 76 (Apr. 6,
27  2022), requiring the City: to refund fines previously levied under the ordinance; to maintain at
    least 2 miles of streets "allowable" for OSV parking; to publish, distribute, and keep updated a
28  map showing the "allowable" streets; to establish a 13-space "safe parking" program for a period
    of at least three years; to provide limited dumping and trash disposal services for OSV dwellers;

1    For these reasons, Named Plaintiffs, having reviewed the Agreement, agree that it

2    provides important benefits to them and the Class, and request that the Court approve the

3    Settlement. Navarro Decl. ¶¶ 7-8; Stevens Decl. ¶¶ 8-9; Covarrubias Decl. ¶¶ 7-8; Estrada Decl.

4    ¶¶ 7-8; Aldaco Decl. ¶¶ 7-8.

5                    ***b.        Costs, Risks, and Delay of Trial and Appeal***

6    In considering "the costs, risks, and delay of trial and appeal," courts in the Ninth Circuit

7    evaluate "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of

8    further litigation; [and] the risk of maintaining class action status throughout the trial." *Hanlon*,

9    150 F.3d at 1026.

10    Here, many of Plaintiffs' claims have already survived the City's motion to dismiss, and

11    even for the claims the Court dismissed, Plaintiffs were granted leave to amend.  ECF No. 64 at

12    15.  Plaintiffs are thus confident in the strength of their case.  However, Plaintiffs also

13    acknowledge that even after surviving a motion to dismiss, they would have had to present

14    sufficient evidence in support of their claims to persuade a trier of fact.  In addition, because the

15    Court denied their motion for a preliminary injunction, without the stay of enforcement agreed to

16    by the Parties to facilitate settlement negotiations, Defendant could have begun to enforce the

17    Ordinances as written while Plaintiffs pursued this action.  Moreover, even if Plaintiffs had won

18    a contested motion for class certification, prevailed on the merits, and fought off any appeals,

19    that process would likely have taken years and cost hundreds of thousands of additional dollars

20    in attorneys' fees and costs.  And for as long as this action remained pending, OSV residents of

21    Mountain View would lack certainty about their ability to remain in their homes in the future.

22    The benefits to Class Members of having certainty and clarity about where they can park their

23    OSVs and all the other benefits the Agreement provides now, rather than after waiting years for

24    this action to resolve, are significant.

25

26    and to provide a process for considering accommodations for persons with disabilities.  Two of
the organizations serving as class counsel in this case—The ACLU Foundation of Northern
27    California and Disability Rights Advocates—also served at counsel for plaintiffs in that case.
Taking into account the differences between the two municipalities and the ordinances in
28    question, the settlement terms in these two cases are roughly equivalent, and similarly beneficial
for each City's vehicularly-housed residents.  Zito Decl. ¶¶ 20-25; Freeman Decl. ¶ 10.

1

### c.    *Effectiveness of Proposed Method of Distributing Relief*

2    Because this is a Rule 23(b)(2) class that seeks only injunctive relief, all Class Members

3    will receive the same relief, which will largely be carried out by the City.  This will include the

4    City's distribution of the Composite Parking Regulation Map, maintenance of three miles of

5    street segments with available parking capacity for OSVs, and towing of OSVs only after the

6    notice as required by the Agreement.  This relief directly addresses the alleged injuries Plaintiffs

7    sought to mitigate in bringing this action, and it will provide equal relief for all Class Members.

8    ### d.    *Proposed Attorneys' Fees*

9    The Parties negotiated the amount of attorneys' fees to be awarded to class counsel

10   through arm's length negotiations that occurred only after they reached agreement on all

11   substantive matters concerning Plaintiffs' claims, and had presented the Settlement Agreement to

12   the Court entered for preliminary approval.  These arm's length negotiations were assisted by

13   Magistrate Judge van Keulen, including through a settlement conference held on December 1,

14   2022.  The result of those negotiations is an agreed amount of $750,000 for an award of fees and

15   costs ("Agreed Amount").  Plaintiffs have respectfully requested an award of the Agreed

16   Amount through their separate Unopposed Motion for Approval of an Award of Attorneys' Fees

17   and Costs pursuant to Federal Rule of Civil Procedure 23(h).  *See* ECF No. 128.

18   The fact that the Parties did not negotiate over attorneys' fees prior to settling the

19   litigation (and that there was no pre-settlement "clear sailing" promise not to contest Plaintiffs'

20   fees) further indicates the absence of conflict between Plaintiffs' counsel and the Class, and

21   supports final approval of the Settlement.  *See e.g.*, *In re Bluetooth Headset Prod. Liab. Litig.*,

22   654 F.3d 935, 949 (9th Cir. 2011) (noting, by contrast, that "clear sailing" provisions regarding

23   fees are disfavored, and potentially indicative of collusion).

24    ### e.    **The Class Release is only for claims that were or could have been
25   asserted in this case, and that are based on an identical factual
     predicate; class member claims for damages are expressly
     excluded.**
26

27   As noted above, in exchange for the substantial injunctive relief that the Parties'

28   Agreement guarantees, Class Members will only release claims "that were [. . .] or could have

1    been asserted in this case relating to the Ordinances, and based on the identical factual predicate

2    as those alleged." Ex. 2 at § 11(D). Class Members' claims for damages are expressly excluded

3    from this release. *Id.* at § 11(I). Courts routinely approve such class releases. *See Hesse v.*

4    *Sprint Corp.*, 598 F.3d 581, 590–91 (9th Cir. 2010) (holding that class release is appropriate, as

5    long as any released claim is "based on the identical factual predicate as that underlying the

6    claims in the settled class action") (citation and quotation marks omitted). There are no other

7    cases impacted by the settlement or release of claims.

8                    4.        The Proposal Treats Class Members Equitably.

9            Under the proposed settlement, and as described above, all Class Members will receive

10   exactly the same injunctive relief: a map that shows where they may lawfully park, at least three

11   miles of available parking for their OSVs, notice via citation prior to towing of their OSVs,[14] a

12   guaranteed process to request accommodations, and a dispute resolution process. Because the

13   Parties' Agreement treats Plaintiffs and all other "class members equitably relative to each

14   other," the Court should find that this factor weighs in favor of preliminary approval and, in

15   consideration of all the other factors, grant preliminary approval of the settlement. *See* Fed. R.

16   Civ. P. 23(e)(2)(D). Also here, none of the Named Plaintiffs receive any special treatment or

17   incentive awards under the Agreement.

18        **E.      The Court Should Enter the Proposed Form of Judgment.**

19           Pursuant to Sections 10 and 13 of the Agreement, the Parties agree that upon Final

20   Approval the Agreement will be binding on the Parties and the Court will enter judgment

21   dismissing the Action with prejudice, subject to the Court retaining jurisdiction throughout the

22   Effective Period, which extends four years from the date of judgment. *See* Ex. 1 at Definitions 6,

23   7 and §§ 10, 13. In accordance with these provisions of the Agreement, Plaintiffs respectfully

24   request that the Court enter the attached form of Judgment following the Court's final approval

25   of the settlement.

26

27

28

---

[14]          Except under the limited circumstances noted in § II(C)(3), above.

UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 5:21-cv-05381-NC

**V.    CONCLUSION**

The settlement of this litigation achieves important benefits for Plaintiffs and all members of the Class.  Plaintiffs respectfully request that the Court enter the attached (1) proposed order certifying the Settlement Class and approving the Agreement; and (2) proposed form of judgment pursuant to Sections 10 and 13 of the Agreement.

Dated: December 22, 2022

/s/ Erin Neff                                        /s/ William S. Freeman
Erin Neff                                             William S. Freeman
Karen Kontz                                          Grayce Zelphin
LAW FOUNDATION OF SILICON          Brandon Greene
VALLEY                                              AMERICAN CIVIL LIBERTIES UNION
                                                         FOUNDATION OF NORTHERN
                                                         CALIFORNIA

/s/ Thomas Zito                         _
Thomas Zito
Sean Betouliere                                    Attorneys for Plaintiffs
DISABILITY RIGHTS ADVOCATES

/s/ Quyen L. Ta
Quyen L. Ta
Arwen R. Johnson
Kelly Perigoe
Samuel R. Diamant
Rachel Rubens
KING & SPALDING LLP